Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/07/2025 09:12 AM CST

State of Nebraska, appellee, v.
Anthoney E. Swartz, appellant.

___ N.W.3d ___

Filed March 7, 2025.    No. S-24-141.

1. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.

2. **Rules of Evidence: Appeal and Error.** Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.

3. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

4. **Effectiveness of Counsel: Appeal and Error.** Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law.

5. ____: ____. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.

6. **Rules of Evidence: Sexual Assault: Other Acts.** Neb. Rev. Stat. § 27-414 (Reissue 2016) allows evidence of prior offenses of sexual assault to prove propensity.

7. ____: ____: ____. Pursuant to Neb. Rev. Stat. § 27-414(1) (Reissue 2016), evidence of the accused's prior commission of another offense of sexual assault is admissible at trial if there is clear and convincing evidence that the accused committed the other offense. Section 27-414(3)

requires a hearing outside the presence of the jury before the court admits such evidence.

8. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding.

9. **Effectiveness of Counsel: Proof.** Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

10. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court.

11. **Rules of Evidence: Hearsay: Records.** Neb. Rev. Stat. § 27-803 (Reissue 2016) of the rules of evidence provides that business records as defined in statute are not excluded by the hearsay rule.

12. **Rules of Evidence: Hearsay.** Neb. Rev. Stat. § 27-803(3) (Reissue 2016) provides that the hearsay rule does not exclude statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

13. ____ : ____. Whether a statement was both taken and given in contemplation of medical diagnosis or treatment is a factual finding made by the trial court in determining the admissibility of the evidence under Neb. Rev. Stat. § 27-803(3) (Reissue 2016).

Appeal from the District Court for Hamilton County, Rachel A. Daugherty, Judge. Affirmed.

Chad Wythers, of Wythers Law, for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.

FUNKE, C.J., MILLER-LERMAN, CASSEL, STACY, PAPIK, and FREUDENBERG, JJ.

MILLER-LERMAN, J.

## I. NATURE OF CASE

Anthoney E. Swartz was convicted by a jury of first degree sexual assault and false imprisonment, and he appeals his convictions. At issue in this appeal are whether the district court for Hamilton County abused its discretion when it admitted testimony of a survivor of Swartz' prior sexual assault conviction and whether Swartz received ineffective assistance of counsel for his trial counsel's failure to object to the admission of a sexual assault intake form created by a sexual assault nurse examiner (SANE). We affirm.

## II. STATEMENT OF FACTS

On January 17, 2023, Swartz was charged by information with (1) sexual assault in the first degree (second or subsequent offense) and (2) false imprisonment.

Swartz' charges arose out of an incident after a Fourth of July party at the home of Swartz' then-fiance. Evidence at trial showed that 17-year-old A.S. was the cousin of Swartz' fiance and stayed at the home overnight. A.S. woke up with Swartz, who was "really drunk and was just trying to take [her] clothes off," on top of her, pinning her down. A.S.' verbal and physical resistance was unsuccessful. Swartz ultimately vaginally penetrated A.S. with his penis.

### 1. EVIDENCE OF PRIOR
### SEXUAL ASSAULT CONVICTION

Pursuant to Neb. Rev. Stat. § 27-414 (Reissue 2016), the State filed a notice of intent to offer evidence of Swartz' prior sexual assault conviction. Swartz had been convicted in 2018 in Hall County District Court, in a case docketed as case No. CR17-659, of first degree sexual assault for engaging in a sexual relationship with his then-13-year-old "girlfriend," M.Z., when Swartz was 19 years old.

At a pretrial hearing, the court heard the testimony of M.Z. and received a certified copy of the plea and sentencing from that prior criminal case. The factual basis for the plea stated, in relevant part:

On April 25, 2017, [a deputy] with the Hall County Sheriff's Department received a report that a 13-year-old female juvenile with the initials M.Z. was eleven weeks pregnant, and she had named [Swartz] as the father of that unborn baby.

[Swartz'] date of birth is [in March 1997], which would make him 20 years of age on the date of the report and 19 years of age on the date that the baby was conceived. M.Z.'s date of birth is . . . 2003, making her 13 years of age on both the date of conception and the report.

M.Z. was interviewed on April 28th of [2017]. She indicated that she was in a relationship and pregnant with [Swartz'] baby. . . . She indicated that they had sexual intercourse approximately ten times during the period of time ranging from late January 2017 to early March 2017.

M.Z. stated that [Swartz] knew she was pregnant and that he had purchased her a pregnancy test. She further indicated that [Swartz] was the only person she'd had sexual intercourse with after the 1st of January, 2017, making him the only possible father of the unborn baby.

Immediately prior to [Swartz'] being arrested on April 28th of [2017], [the deputy] made contact with [Swartz] at his place of employment. He informed [Swartz] that he was going to arrest him, so [Swartz] needed to try to find somebody to take over the store where [Swartz] was working. The deputy was standing by while [Swartz] made a phone call. The deputy heard [Swartz] tell the person on the other end of the phone that he was at a drunken party and the girl lied about her age, and that it was a statutory rape situation.

However, [the deputy] had investigated in early March 2017 regarding [Swartz'] possibly having sexual intercourse with M.Z., and he'd interviewed [Swartz]. During that investigation, [Swartz] had never indicated to the deputy that M.Z. had lied about her age or made any mention of a drunken party during his interview.

[Swartz] had told the deputy during the interview that he had checked the law and there was nothing illegal about a 19-year-old hanging out with a 13-year old.

Based upon the information presented to the court at the pretrial hearing, the court tentatively granted the State's § 27-414 motion to admit the testimony of the prior sexual assault victim subject to the court's hearing the trial testimony of the current victim, A.S. The court found clear and convincing evidence that the prior allegations of sexual contact had occurred due to Swartz' plea and conviction, found that the incidents were not too remote in time to exclude evidence of the prior sexual assault, and briefly analyzed similarities between the prior offense and the current offense. In its preliminary ruling, the court noted the similar age of the victims (13 and 17); noted that the sexual contact occurred at another person's home where the participants were consuming alcohol; and noted that Swartz forcibly removed the clothing of each girl.

The court reserved ruling on Swartz' motion in limine that requested the court to prevent the State from introducing evidence of his prior sexual assault conviction.

At trial, after A.S. testified, the State sought under § 27-414 to introduce evidence of Swartz' prior sexual assault conviction. After hearing the testimony, the court found that there were similarities between the alleged sexual assault of A.S. and the prior assault of M.Z. and admitted the testimony of M.Z. under § 27-414. The court admitted both the live testimony of M.Z. at trial and a certified copy of the prior first degree sexual assault conviction against Swartz.

After the State's § 27-414 motion was granted, Swartz' prior sexual assault victim M.Z. testified similarly to her testimony at the § 27-414 hearing. She told the jury she met Swartz through mutual friends at the end of 2016 when she was 13 years old and he was 19 years old. She testified that she had sexual intercourse with Swartz five times, but that it was never willingly. She testified that her first sexual encounter with Swartz occurred when she was at a friend's house and was so highly intoxicated that she does not fully remember it, but she woke up at Swartz' sister's house and did not have all her clothes on. She explained that when she did not want to have sex, she told him she did not feel comfortable or it was not the time or place and not right, but he would tell her he did not care and was going to get what he wanted from her.

## 2. SANE Report

Deena Schaeffer, a registered nurse and trained SANE, testified that she examined A.S. on July 5, 2021, and completed a form titled "Adolescent/Adult Forensic Medical Examination Form" (the SANE report). Schaeffer testified that the role of a SANE nurse is primarily medical to ensure patients receive any care they need and secondarily to collect evidence from the patients, and she explained the process she does for a sexual assault examination. She testified she collects the patient's demographics and medical history, then asks for a description of the assault if the patient is willing to provide it, as well as sexual history prior to the assault and details for postassault actions the patient engaged in. Schaeffer explained that the form asks about the assailant's identity, for corroboration purposes if DNA evidence matches a suspect's name, but also for medical purposes, such as to inquire about the patient's awareness of whether the suspect is known to have any sexually transmitted infections or drug use via needles that would lead to possible testing and treatment for those conditions. Schaeffer testified that she prepared the SANE report during A.S.' sexual assault examination, which included her observations of A.S.

and recorded the information A.S. provided. She testified that she further took photographs of A.S. and collected physical evidence to turn over to law enforcement.

The SANE report was received into evidence without objection from Swartz' trial counsel. Although the State argued several theories of the report's admissibility, the trial court did not explain its decision on the record. In a pretrial ruling, the court had preliminarily ruled that the report was admissible under Neb. Rev. Stat. § 27-803(4) (Reissue 2016) (statements made for purposes of medical diagnosis or treatment).

### 3. A.S.' Trial Testimony

A jury trial was held November 13 to 15, 2023. Both the State and Swartz presented witnesses regarding the investigation and the incident.

A.S. testified that she knew Swartz because he was engaged to her cousin, but before the incident had met him only four to five times. She stated that on July 4, 2021, A.S.' aunt took her to a Fourth of July party at the cousin and Swartz' house. She explained she "stuck to" either her aunt's or her cousin's side all night because she did not know anyone else there. She stated she wore a black bodysuit with a swimsuit underneath, shorts, and sneakers.

A.S. testified that during the party, the only time she followed Swartz around was to help him carry fireworks. She explained that at one point, Swartz wrapped his leg around her and tripped her, but that she did not touch him at any point during the night. She stated he made inappropriate sexual comments toward her and her aunt that made her uncomfortable, specifically telling her that he was going to rape her, but "then he laughed it off," so she thought he was joking.

A.S. testified that her aunt left around 11 p.m. but that A.S. did not leave at that time, because her cousin asked her to stay the night and agreed to take A.S. home the next day. A.S. stated she saw Swartz drinking a lot that night, saying that he always had a drink in his hand and that his speech made him seem

impaired, and she stated that she also had one alcoholic drink around 7 p.m. that her cousin gave her but drank water the rest of the night.

A.S. testified that the fireworks got over around 1 a.m. and that all of those present then returned inside and got ready for bed. A.S. was asked to sleep on a couch. She identified the layout of the house, including where her cousin and Swartz' room was in relation to the couch in the living room, where she slept.

A.S. took her shorts off and slept in her swimsuit bottoms and a t-shirt. She was asleep for about an hour before she woke up to Swartz on top of her. She testified that Swartz was touching her inappropriately and trying to take her swimsuit bottoms off. She told him no and tried to tell him to stop and push him off, but she was unable to get away, because his legs and lower body pinned her down. He covered her mouth, told her to "'just let it happen,'" and told her he had been waiting to "do that" for as long as he had known her. He removed her swimsuit bottoms and penetrated her vagina with his penis. She testified that she was not sure how long he was on top of her with his penis inside of her but that after he took his penis out, he got up and stood near the kitchen and watched her as she lay on the couch and cried until she fell back asleep.

A.S. testified that she woke up around 11 a.m. the next day and got her cousin to take her home. She testified that she told her cousin on the ride home what Swartz had done to her, but that the cousin got upset with her and did not believe her, so she texted a friend and told her. A.S.' grandmother took her to a hospital, where she had the sexual assault examination done by Schaeffer.

### 4. Convictions and Sentencing

The jury found Swartz guilty of first degree sexual assault and false imprisonment. The district court accepted the jury's verdicts, entered Swartz' convictions, ordered a presentence investigation, and set the matter for sentencing.

With respect to the first degree sexual assault, the court sentenced Swartz to a term of imprisonment for a mandatory minimum period of not less than 25 years and not more than 30 years. With respect to the false imprisonment conviction, the court sentenced Swartz to a period of not less than 3 years and not more than 3 years. The court ordered that the sentences be served concurrently.

Swartz appeals.

### III. ASSIGNMENTS OF ERROR

Swartz assigns, restated, that (1) the district court abused its discretion when it admitted evidence of Swartz' prior conviction for sexual assault and (2) he received ineffective assistance of trial counsel because his counsel did not object to the admission of the SANE report.

### IV. STANDARDS OF REVIEW

[1,2] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Valverde*, 286 Neb. 280, 835 N.W.2d 732 (2013). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Id*.

[3] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Barnes*, 317 Neb. 517, 10 N.W.3d 716 (2024).

[4,5] Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Rezac, ante* p. 352, 15 N.W.3d 705 (2025). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to

conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## V. ANALYSIS

### 1. The District Court Did Not Abuse Its Discretion When It Admitted Evidence of Swartz' Prior Sexual Assault Conviction

Swartz' first assignment of error concerns the admission of evidence of his prior conviction for sexual assault. Prior to trial, the State sought to introduce, pursuant to § 27-414, evidence of Swartz' 2018 conviction for sexual assault involving M.Z. The court held a pretrial hearing at which it heard the testimony of M.Z. and received a certified copy of the plea, conviction, and sentencing from that prior criminal case. Swartz contended at trial and now asserts in his appeal that there were not sufficient similarities between the prior statutory sexual assault of M.Z. and the sexual assault of A.S. to permit admission of evidence of the prior assault. He notes that in the prior incident of statutory sexual assault, the victim, M.Z., was 13 years old and he was 19 years old, but he characterizes the acts as having occurred in a consensual relationship. Thus, he asserts that this prior conduct was not probative of whether he committed the nonconsensual sexual assault charged in this case. The district court reserved ruling on the § 27-414 motion and, after hearing A.S.' testimony at trial, overruled Swartz' objection to the § 27-414 evidence and admitted the testimony of M.Z. at trial. We find no abuse of discretion and reject this assignment of error.

[6,7] Section 27-414 allows evidence of prior offenses of sexual assault to prove propensity. *State v. Valverde*, 286 Neb. 280, 835 N.W.2d 732 (2013). Pursuant to § 27-414(1), evidence of the accused's prior commission of another offense of sexual assault is admissible at trial if there is clear and convincing evidence that the accused committed the other offense. Section 27-414(3) requires a hearing outside the

presence of the jury before the court admits such evidence. According to the statute, at the hearing,

> the rules of evidence shall apply and the court shall apply a section 27-403 balancing and admit the evidence unless the risk of prejudice substantially outweighs the probative value of the evidence. In assessing the balancing, the court may consider any relevant factor such as (a) the probability that the other offense occurred, (b) the proximity in time and intervening circumstances of the other offenses, and (c) the similarity of the other acts to the crime charged.

§ 27-414(3).

At the § 27-414 hearing, as we have recited above, M.Z. testified that she was 13 years old when she met Swartz and he was 19 years old. She testified that she had told Swartz about her age and that she and Swartz had sexual intercourse on more than one occasion. The first incident occurred when she was babysitting Swartz' nephews. According to M.Z., Swartz was heavily intoxicated and attempted to have intercourse with M.Z. in front of the children. She pushed him away and told him no, but Swartz physically removed her clothes and penetrated her with his "genitalia." She testified that although she told him no, Swartz told her that "boys were gonna be boys." She further testified to another incident of his removing her clothes and assaulting her over her resistance, and to other occasions where she did not resist because she thought it was futile.

Following the testimony of M.Z., the trial court balanced the considerations set forth in Neb. Rev. Stat. § 27-403 (Reissue 2016) as to whether the risk of prejudice would substantially outweigh the probative value of the evidence of the conviction pertaining to M.Z. The court ruled that propensity evidence "has undisputable probative value" but that according to the federal courts analyzing such cases,

> [The] value in a given case will depend on innumerable considerations, including the similarity of the prior acts

to the acts charged, the closeness in time of the prior acts to the acts charged, the frequency of the prior acts, the presence or lack of intervening events, and the need for evidence beyond the testimony of the defendant and the alleged victim.

Accord *State v. Kirbee*, 284 Neb. 72, 815 N.W.2d 872 (2012), citing *U.S. v. Guardia*, 135 F.3d 1326 (10th Cir. 1998).

In both its written order and its ruling from the bench, the court analyzed the statutory factors set forth above. See § 27-414(3). As to probability that the prior sexual assault occurred, the court found clear and convincing evidence that the other assault occurred, in part because Swartz entered a plea and was found guilty of first degree sexual assault. Reviewing the proximity in time and intervening circumstances between the two assaults, the court concluded that the time lapse of approximately 4 years was not remote.

The district court also noted additional similarities based on the evidence and stated on the record:

Both victims at the time of the alleged incidents were of a similar age. [M.Z.] testified that she was 13 years old, [A.S.] testified that she was 17 years old. While she was over the age, the statutory age, she is still a minor, still of a young age.

Some of the alleged incidents both with [M.Z.] and the alleged incident with [A.S.] occurred at another person's home during a party at which the participants were consuming alcohol, including [Swartz] and the under age [sic] victim. In each case, [M.Z.] was provided alcohol as was [A.S.] by the adults who were there, including [Swartz] being one of those adults present.

Both [M.Z.] and [A.S.] testified that [Swartz] used force and forcibly removed the clothes of each. Each described incidents where intercourse happened but others were present in the home, including minor children. Each described that [Swartz] physically removed her clothing. Each described incidents of penile genitalia

— penile/vaginal penetration but the sex was against her will, that there was restraint and that the victims — alleged victims pushed — attempted to push [Swartz] away, and at times that the fighting was futile.

The Court would further note the age difference between [Swartz] and each victim is very similar. He was 19 when the first victim [was] 13, an age difference of six years. Here it appears he was approximately 24 and the alleged victim 17, a difference of seven years.

After the court conducted the balancing test required by § 27-403 and considered the factors in § 27-414(3), it concluded that the probative value of Swartz' prior sexual assault on M.Z. was not outweighed by the danger of unfair prejudice. It determined that the evidence of Swartz' prior sexual assault conviction was admissible at trial over Swartz' objection.

Based on our review of the record, we do not believe that the district court abused its discretion when it concluded that the evidence of the prior sexual assault conviction was admissible under § 27-414(3). The trial court's rulings noted the numerous similarities between the assaults, including the ages of the victims, the age gap between the victims and Swartz, the use of force and removal of the victims' clothes, the presence of alcohol supplied to the victims by adults, and other qualitative similarities between the sexual assaults. We agree with the district court that after balancing the relevant factors, the probative value of Swartz' prior sexual assault conviction was not outweighed by the danger of unfair prejudice. We determine that the district court did not abuse its discretion when it admitted evidence of Swartz' prior sexual assault against M.Z. We reject this assignment of error.

## 2. Swartz Was Not Denied Effective Assistance of Counsel With Respect to Admission of the SANE Sexual Assault Intake Form

Swartz assigns, restated, that his trial counsel was ineffective under the test articulated in *Strickland v. Washington*, 466

U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), for failing to object to the admission of the SANE report. He contends that the SANE report contained inadmissible evidence and that he was prejudiced as a result of counsel's failure to object. We reject this assignment of error.

### (a) Ineffective Assistance of Counsel Under *Strickland*

[8] Swartz is represented by new counsel in this direct appeal. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Rezac, ante* p. 352, 15 N.W.3d 705 (2025).

[9] Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington, supra*, the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Dat, ante* p. 311, 15 N.W.3d 410 (2025). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id*.

[10] An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *Id*.

Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the

ineffective performance claims. *Id*. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id*.

Swartz contends that his trial counsel's failure to object to the admission of the SANE report prejudiced him, asserting that without the SANE report, his conviction "would have been improbable." Brief for appellant at 19. He argues that the exhibit was inadmissible hearsay under § 27-803. In this regard, Swartz essentially asserts that because the SANE report document itself is hearsay and the content of the report contains hearsay statements by A.S., the SANE report was inadmissible as double hearsay. We reject these assertions.

"Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Neb. Rev. Stat. § 27-801(3) (Cum. Supp. 2024). Hearsay is not admissible at trial except as provided by the Nebraska Evidence Rules. See Neb. Rev. Stat. § 27-802 (Reissue 2016). "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." Neb. Rev. Stat. § 27-805 (Reissue 2016). When an out-of-court statement relates the content of another out-of-court statement, there must be an independent hearsay exception for each statement. *State v. Stricklin*, 290 Neb. 542, 861 N.W.2d 367 (2015).

### (b) Business Records

[11] We first turn to the material recorded by Schaeffer in the SANE report, which material Swartz asserts is inadmissible hearsay. Under § 27-803 of the rules of evidence, we have observed that routine recordkeeping, essential to the conduct of business, produces the reliability necessary for admissibility of business records. See *State v. Robinson*, 272 Neb. 582, 724 N.W.2d 35 (2006), *abrogated on other grounds, State v.*

*Thorpe*, 280 Neb. 11, 783 N.W.2d 749 (2010). Section 27-803 of the rules of evidence provides that business records as defined in statute are not excluded by the hearsay rule.

Business records are defined in statute as

[a] memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, other than opinions or diagnoses, that was received or acquired in the regular course of business by an entity from another entity and has been incorporated into and kept in the regular course of business of the receiving or acquiring entity; that the receiving or acquiring entity typically relies upon the accuracy of the contents of the memorandum, report, record, or data compilation; and that the circumstances otherwise indicate the trustworthiness of the memorandum, report, record, or data compilation, as shown by the testimony of the custodian or other qualified witness.

§ 27-803.

In this case, Schaeffer's testimony makes clear that the written SANE report contains factual statements, observations, and photographs routinely incorporated in SANE reports as they are regularly kept. The information recorded on the SANE report is in the nature of objective intake information. Thus, the first step of the double hearsay requirement is met with respect to the information recorded in the SANE report prepared in the regular course of business. The SANE report conforms to the business records exception to the hearsay rule.

### (c) Medical Treatment

Next, we turn to statements by A.S. made to Schaeffer and included in the SANE report. Because the statements by A.S. quoted in the SANE report were made for purposes of medical diagnosis or treatment, they are admissible under the hearsay exception found in § 27-803(3).

[12] Section 27-803(3) provides that the hearsay rule does not exclude "[s]tatements made for purposes of medical

diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

[13] Whether a statement was both taken and given in contemplation of medical diagnosis or treatment is a factual finding made by the trial court in determining the admissibility of the evidence under § 27-803(3). *State v. Jedlicka*, 297 Neb. 276, 900 N.W.2d 454 (2017).

Section 27-803(3) is based on the notion that a person seeking medical attention will give a truthful account of the history and current status of his or her condition in order to ensure proper treatment. *State v. Jedlicka, supra*. We have explained that the scope of the exception extends beyond the patient-physician relationships, and we stated as follows:

> Although the heart of this exception lies in statements made by a patient to a treating physician, the exception casts its net wider than the patient-physician relationship. Under the federal and Nebraska rules of evidence, statements admissible under the medical diagnosis and treatment exception are not restricted to statements made by the patient and the statements need not be made to a physician. . . . As a general rule, the exception applies to persons seeking medical assistance from persons who are expected to provide some form of health care. . . . Thus, "[t]he declarant need not be the patient—need not be the person who is experiencing the symptoms to be diagnosed or treated. In other words, the statement need not refer to the declarant's own symptoms."

*In re Interest of B.R. et al.*, 270 Neb. 685, 691, 708 N.W.2d 586, 591 (2005) (citations omitted).

We are aware of the tension caused by the fact that the statements made to a health care provider may be shared with law enforcement. The fundamental inquiry to determine whether statements made by a declarant who knew that information could be shared with law enforcement had a medical

purpose is if the challenged statement has some value in diagnosis or treatment, because the patient would still have the requisite motive for providing the type of sincere and reliable information that is important to that diagnosis and treatment. *Id.* But statements having a dual medical and investigatory purpose are admissible under § 27-803(3) only if the proponent of the statements demonstrates that (1) the declarant's purpose in making the statements was to assist in the provision of medical diagnosis or treatment and (2) the statements were of a nature reasonably pertinent to medical diagnosis or treatment by a medical professional. *State v. Jedlicka, supra*. The fundamental inquiry under § 27-803(3), when considering the appropriate state of mind of the declarant, may be reasonably inferred from the circumstances; such a determination is necessarily fact specific. See *State v. Jedlicka, supra*.

Here, the State established the circumstances of the preparation of the SANE report. The SANE report prepared by Schaeffer is included in the emergency room records and was provided to medical providers as part of A.S.' medical treatment. Schaeffer communicates with victims' medical providers. A.S. detailed her injuries and recent medical history to Schaeffer. Schaeffer testified that items such as the details of the assault and the identity of the alleged perpetrator, included on the form, can be relevant for medical purposes to look for injury and because of issues involving drug use, needles, or sexually transmitted diseases. Admittedly, on the page regarding consent for forensic examination and release of evidence, the report disclosed that it would be required to be released to law enforcement due to the age of A.S. The record shows that it can be inferred that A.S. understood that the report served a dual purpose in this case.

We are aware of a split in authority with respect to whether a victim's statements made to medical personnel, including sexual assault examiners, that describe the assault and naming the assailant are made for the purpose of medical treatment and thus admissible. Many courts have found statements

made to a SANE to be admissible. See, e.g., *U.S. v. Chaco*, 801 F. Supp. 2d 1200 (D.N.M. 2011); *Ward v. State*, 50 N.E.3d 752 (Ind. 2016); *State v. Miller*, 293 Kan. 535, 264 P.3d 461 (2011); *State v. Harper*, 770 N.W.2d 316 (Iowa 2009); *State v. Slater*, 285 Conn. 162, 939 A.2d 1105 (2008); *State v. Krasky*, 736 N.W.2d 636 (Minn. 2007); *State v. Stahl*, 111 Ohio St. 3d 186, 855 N.E.2d 834 (2006); *People v. Vigil*, 127 P.3d 916 (Colo. 2006); *Commonwealth v. DeOliveira*, 447 Mass. 56, 849 N.E.2d 218 (2006); *Hobgood v. State*, 926 So. 2d 847 (Miss. 2006); *State v. Vaught*, 268 Neb. 316, 682 N.W.2d 284 (2004); *Thompson v. State*, 438 P.3d 373 (Okla. Crim. App. 2019); *People v. Garland*, 286 Mich. App. 1, 777 N.W.2d 732 (2009). In contrast, courts have excluded a SANE report, reasoning that a victim's statements to a sexual assault examiner were testimonial and violate the confrontation clause because of the examiner's relationship with police or the involvement of the police in the examination process, coupled with the absence of any need for, or provision of, medical treatment during the examination. These cases include *U.S. v. Gardinier*, 65 M.J. 60 (C.A.A.F. 2007); *Hartsfield v. Com.*, 277 S.W.3d 239 (Ky. 2009); *State v. Cannon*, 254 S.W.3d 287 (Tenn. 2008); *State v. Romero*, 141 N.M. 403, 156 P.3d 694 (2007); *Medina v. Nevada*, 122 Nev. 346, 143 P.3d 471 (2006); and *People v. Vargas*, 178 Cal. App. 4th 647, 100 Cal. Rptr. 3d 578 (2009).

We previously discussed this question in *State v. Jedlicka*, 297 Neb. 276, 900 N.W.2d 454 (2017), which involved the sexual assault of a child. In that case, we determined that a video recording of a medical interview with a child performed by an employee with a child advocacy center in the chain of medical care was admissible and noted that despite a dual purpose, the fundamental purpose of the statements was to obtain medical diagnosis or treatment. We have reviewed the record and determine that the forensic examination of A.S. in this case, recorded in the SANE report, is analytically similar to that in *Jedlicka*. We further note that because Schaeffer

and A.S. testified and were available for cross-examination, the concerns raised regarding adequate confrontation of witnesses have been satisfied. Based on our review of the record, the district court did not err to the extent it found that A.S.' statements to Schaeffer were admissible under the medical treatment exception to the rule against hearsay.

We have determined above that the SANE report was admissible as a business record and that the statements by A.S. contained therein were admissible as having been made for medical treatment. Swartz' double hearsay challenge is without merit. We have stated that it is not ineffective for trial or appellate counsel to "fail" to make a meritless claim. See *State v. Jaeger*, 311 Neb. 69, 970 N.W.2d 751 (2022). Because a potential objection to the report would have been overruled, trial counsel's failure to object was not ineffective assistance of counsel. Swartz' second assignment of error is without merit.

## VI. CONCLUSION

For the reasons explained above, we reject Swartz' assignments of error challenging the admissibility of evidence and claiming ineffective assistance of counsel. We affirm Swartz' convictions.

Affirmed.