IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. WONKA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JOHN G. WONKA, APPELLANT.

Filed February 17, 2026.    No. A-24-845.

Appeal from the District Court for Saunders County: CHRISTINA M. MARROQUIN, Judge. Affirmed.

Chad J. Wythers of Wythers Law Firm for appellant.

Michael T. Hilgers, Attorney General, and P. Christian Adamski for appellee.

PIRTLE, WELCH, and FREEMAN, Judges.

PIRTLE, Judge.

## I. INTRODUCTION

John G. Wonka appeals his conviction and sentence in the district court for Saunders County for first degree sexual assault. He argues multiple ineffective assistance of counsel claims, along with claims that the district court erred in evidentiary matters. We affirm.

## II. BACKGROUND

### 1. BACKGROUND AND PROCEDURAL HISTORY

Following a jury trial, Wonka was convicted of first degree sexual assault, a Class II felony punishable by 1 to 50 years' imprisonment. See, Neb. Rev. Stat. § 28-319 (Reissue 2016); Neb. Rev. Stat. § 28-105 (Cum. Supp. 2024). The district court sentenced Wonka to a period of not less than 8 years' imprisonment and not more than 10 years. Wonka subsequently appealed.

Prior to trial, both the State and Wonka filed numerous motions. Wonka filed two motions in limine that are relevant to this appeal: (1) to exclude evidence regarding Wonka's statements and victim blaming and (2) to exclude the victim's 911 call. In the first motion, Wonka sought to exclude all references to Wonka having made statements agreeing with the notion of "if a woman wears a mini skirt, they are asking to get raped" and any references to Wonka having made comments that could be construed as "victim blaming." Wonka argued in the first motion that his statements and victim blaming should be excluded on the basis that they were irrelevant, improper character evidence, and inadmissible prior bad acts evidence. Wonka next argued that the victim's 911 call was unfairly prejudicial, cumulative, and inflammatory to such a degree that it outweighed any probative value. The court overruled these motions.

Wonka filed a motion for the court to reconsider his motion in limine regarding Wonka's statements and victim blaming. The court overruled the motion and opined that given how close in time this statement was that it becomes part of the "overall intrinsic" to the case.

## 2. EVIDENCE AT TRIAL

At trial, C.O. testified that on May 5, 2022, she went to her sister, Crystal O.'s, home in Weston, Nebraska, for a party. At the party, C.O. had a margarita and two shots of tequila. After she consumed the drinks, she had an emotional conversation with Crystal. In addition, C.O. also felt ill and threw up one or two times in her sister's bathroom. Just before midnight, Crystal invited C.O. to stay overnight, as C.O. did not feel well enough to go home.

Before C.O. fell asleep, she called her boyfriend and informed him that she would be staying the night at Crystal's home. After her conversation with her boyfriend, she sent him some text messages and went to bed sometime between 11:50 p.m. and 12:30 a.m.

The next thing C.O. remembered was waking up with Wonka on top of her and "inside of [her]." C.O. testified that she did not know who it was at first, just that it was not her boyfriend. C.O. testified that she said "no, no you're not my boyfriend" but it was muffled by Wonka saying "put it in, put it back in." C.O. stated that, after she said, "no, no you're not my boyfriend," Wonka continued to penetrate her. C.O. said that she was scared and frozen as she did not know what would happen if she did not comply. She noted that Wonka was wearing a black Weston Fire and Rescue shirt.

C.O. testified that at some point Wonka laid down next to her, and she saw this as her opportunity to escape the situation. C.O. went to the bathroom, texted her boyfriend, and told him that she had been raped. After texting, she grabbed all her belongings and went out to her car. When C.O. got to her car, Crystal followed her and asked what was going on. C.O. told Crystal she had been raped. Crystal asked C.O. who had raped her, and C.O. said that it was someone in a black Weston Fire and Rescue shirt. Crystal then told C.O. that her assailant was Wonka, as he was the one wearing the shirt.

C.O. called 911. C.O. began speaking to someone, but felt unsafe near Crystal's house, so she relocated to the post office. When she got to the post office, she waited for a police officer to arrive. Later, C.O. arrived at the hospital where a forensic nurse, Jillian Portzeba, performed a sexual assault examination and she was questioned by a detective. C.O. also told the nurse at the exam what happened that evening.

C.O. identified Wonka in the courtroom as the man who assaulted her.

### (a) 911 Call

The State called Larry Huisman to testify. Huisman was previously employed by the Saunders County Sherrif's Office as a dispatcher. Huisman testified to taking a call around 2 a.m. on May 6, 2022. He recalled that C.O. was the caller and that she sounded frightened. He reviewed a recording of the call between him and C.O., and he testified that it had not been altered and was true and accurate. The State offered the audio recording of the 911 call into evidence. Wonka objected on relevance, unfair prejudice, and renewed his motion in limine. The court overruled the motion in limine and received the audio recording into evidence. The State played the audio recording for the jury. During the 911 call, C.O. told the officer that she gave her sister a description of the assailant, and her sister informed her that it was Wonka.

### (b) Body Camera Footage

The State called Kyle Boyle to testify. Boyle is a road sergeant for the Saunders County Sheriff's Office who was dispatched to follow up on a report of a sexual assault on May 6, 2022, during the early morning. Boyle went to the post office in Weston, where he found C.O. crying on the sidewalk. Boyle testified that C.O. was shaken and upset, and she told him she had been sexually assaulted by a heavier set man with reddish hair in a Weston Fire and Rescue shirt. During their conversation, Boyle was wearing a body camera, and he saved the body camera footage from his contact with C.O. Boyle reviewed what had been marked as exhibit 63, which contained an edited portion of the body camera footage, and found it to be a true and accurate copy. The State offered exhibit 63 into evidence. Wonka objected to the entire footage on hearsay and foundation. The body camera footage in exhibit 63 was received into evidence, published, and played for the jury. The body camera footage contained the following statement made by C.O. to Boyle, "[Crystal] told me it was Wonka . . . she knows for sure who it is . . . all I remember was waking up to someone with a fire and rescue shirt on top of me."

### (c) SANE Kit and DNA Analysis Testimony

The State called Portzeba, the forensic nurse examiner for C.O. on May 6, 2022. Portzeba used a SANE kit, which is used to collect DNA and to look for bodily fluids and injuries. As a part of the examination, Portzeba testified that she utilized an electronic form to take patient history and complete paperwork to be more specific as to the actual incident. Portzeba testified that an investigator interviewed C.O. about the incident and that she took notes as well. Portzeba testified as to how a SANE exam works and what sort of questions she asked C.O. The State offered the SANE form that Portzeba completed into evidence.

Wonka objected to the form based on chain of custody, foundation, best evidence, and cumulative evidence. The court overruled the objection, and the form was entered into evidence.

Portzeba testified about the swabbing process to collect DNA from the victim and what areas of C.O. she swabbed.

Portzeba also did an examination of Wonka. She testified that Wonka's exam was different than C.O.'s exam as she had to follow the steps of what was set forth in the warrant. Portzeba testified that she swabbed Wonka and that his clothing was taken for evidence collection.

On cross-examination of Portzeba, Wonka offered, and the court admitted into evidence, C.O.'s complete medical record, which contained previously admitted portions of C.O.'s SANE

report and electronic medical records. Wonka elicited testimony from Portzeba that she did not make a note or inform law enforcement when C.O. gave her additional information about the assault, specifically that Wonka performed oral sex on her.

The State then called Catherine Green to testify. Green is a forensic scientist at the Nebraska State Patrol Crime Lab. Green stated that she received evidence in this case, a SANE kit from a SANE nurse, and performed tests on the collected swabs. Green testified to the swab from C.O.'s mon pubis, which showed that two individuals were detected. Green stated that C.O. was identified as the major contributor, but that she could not make any conclusions regarding the minor contributor.

Green next testified to the swab from Wonka's genitalia. She stated she was able to identify both Wonka as a minor DNA contributor and a major female DNA contributor on that swab. Green was able to determine the mixture of DNA was $3.78 \times 10$ to the 26th more likely to have originated from Wonka and C.O. rather than from Wonka and an unknown, unrelated individual. Green then testified to performing an analysis on Wonka's boxer shorts, to which she stated that both Wonka and C.O. were DNA contributors in that mixture.

The State also called Jeff Bracht to testify. Bracht is a forensic laboratory supervisor for the Nebraska State Patrol Crime Laboratory. Bracht testified that he performed DNA testing on the samples in this case. He reached conclusions based on the vaginal swabs from the SANE kit that Wonka was included in the profile, with a statistical confidence of 95 percent. Bracht was unable to make any statistical calculations regarding the other swabs.

### (d) Wonka's Alleged Statements to Dan Chapek

The State called Dan Chapek to testify. Chapek was present at the party on May 5, 2022, and stayed into the early hours of May 6. Chapek testified that at some point during the evening, he recalled that C.O. went to bed. Chapek recalled speaking with Wonka, another guest, and C.O.'s sister. He went outside and was joined by C.O.'s sister and another guest, and he assumed Wonka remained in the house. After about 15 to 20 minutes, Wonka rejoined the group outside. During a conversation, Chapek asked Wonka, "Is a rape victim asking for rape based on what she wears?" and Wonka replied that "what someone chooses to wear kind of gets them the consequence they're asking for."

### (e) Crystal's Alleged Previous Assault

The State then called Crystal to testify. Crystal testified to a variety of things, but on cross-examination Wonka's counsel asked her about her own accusations of a sexual assault against Wonka. Wonka elicited testimony from Crystal that she did not mention anything about her own assault until after C.O.'s investigation occurred. Crystal stated that Wonka assaulted her when she was in her early twenties, that she had gone out drinking, and ended up staying at her cousin's apartment. She testified that she went to sleep and when she woke up Wonka was assaulting her. Crystal said that she remained friends with Wonka on social media, never reported the assault, served on a volunteer fire and rescue team with Wonka, and was okay with Wonka being one of the few people at her home for a relatively small party. Crystal admitted that about a year and a half later, she sent text messages to C.O. that said, "I need to know what I can do to

help pin Wonka" and "I want him off the town board." Crystral said she was frustrated that it took over a year and a half to arrest Wonka for assaulting her sister.

## III. ASSIGNMENTS OF ERROR

Wonka assigns that (1) the district court erred in admitting a video recording where C.O. told a police officer that her sister identified the person who assaulted her as Wonka and (2) that he received ineffective assistance of counsel in numerous respects.

## IV. STANDARD OF REVIEW

Harmless error review looks to the basis on which the trier of fact actually rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but, rather, whether the actual guilty verdict rendered was surely unattributable to the error. *State v. Rogers*, 277 Neb. 37, 760 N.W.2d 35 (2009).

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Swartz*, 318 Neb. 553, 17 N.W.3d 174 (2025). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Id.*

Whether a claim of ineffective assistance of counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Corral*, 318 Neb. 940, 20 N.W.3d 372 (2025). In reviewing a claim of ineffective assistance of counsel on direct appeal, an appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id.*

## V. ANALYSIS

### 1. EVIDENTIARY RULING

On appeal, Wonka alleges that the district court erred in admitting a video recording of a conversation between C.O. and a police officer where she informs the officer that her sister told her that the perpetrator was Wonka. Wonka is specifically objecting to the statement made by C.O., where she says, "she told me it was Wonka. His last name is Wonka. W-O-N-K-A . . . She knows who it is for sure, because I just said all I remember is waking up to someone with a Fire and Rescue on top of me."

Wonka argues that the court abused its discretion in admitting the recording as one of the statements made within the recording constituted double hearsay. During trial, Wonka objected based on hearsay and foundation. The district court overruled both objections and admitted the body camera footage, although it did not cite to a specific hearsay exception.

We need not explore whether the district court erred in admitting the body camera footage. Even assuming that the testimony should not have been admitted, any such error was harmless. Where the evidence is cumulative and there is other competent evidence to support the conviction,

the improper admission or exclusion of evidence is harmless beyond a reasonable doubt. *State v. Matteson*, 313 Neb. 435, 985 N.W.2d 1 (2023).

The statement within the body camera footage at issue, where C.O. says that her sister, Crystal, identified Wonka as the perpetrator, is entirely cumulative of C.O.'s earlier testimony, where she testified to the jury that she did not know who the perpetrator was, only what he looked like and was wearing, until her sister identified him for her. Therefore, any error in admitting the body camera footage was harmless beyond a reasonable doubt.

## 2. INEFFECTIVE ASSISTANCE OF COUNSEL

Through different counsel, Wonka assigns on appeal that his trial counsel provided ineffective assistance in several respects. Wonka assigns his trial counsel erred in the following ways: (a) failing to object to double hearsay when C.O. told the 911 operator that her sister told her the alleged assailant was Wonka; (b) failing to object to a comment made by Wonka on the night of the alleged assault that, "if a woman wears a mini skirt, they are asking to get raped," considering what C.O. was wearing; (c) failing to file a pretrial motion or object to testimony from the SANE examination report; (d) offering the complete medical record of the victim, even though it contained prejudicial information for Wonka; (e) not objecting to testimony about how DNA results could not exclude Wonka; (f) eliciting testimony about a sexual assault perpetrated on C.O.'s sister by Wonka; (g) not filing a pretrial motion to suppress items seized from Wonka pursuant to a warrant with deficiencies; and (h) failing to call character witnesses who would have testified to the victim's reputation for dishonesty. We will address each claim in turn but first we review the general principles governing ineffective assistance claims on direct appeal.

A proper ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial. *State v. Corral*, 318 Neb. 940, 20 N.W.3d 372 (2025). Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Corral, supra*.

To show deficient performance under the *Strickland* test, the defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Corral, supra.* Trial counsel's decisions that amount to reasonable trial strategy do not constitute deficient performance. *Id.*

Trial counsel is afforded due deference to formulate trial strategy and tactics. *Id.* We do not use perfect hindsight to criticize unsuccessful trial strategies. *Id.* Rather, we must assess trial counsel's performance from counsel's perspective when counsel provided the assistance. *Id.* There is a strong presumption that counsel acted reasonably, and an appellate court will not second-guess counsel's reasonable strategic decisions. *Id.* We have cautioned that it is more the exception than rule that defense counsel's strategy can be reasonably inferred from the trial record on direct appeal. *Id.*

In addressing the "prejudice" component of the *Strickland* test, we focus on whether counsel's deficient performance renders the result of the trial unreliable or the proceedings fundamentally unfair. *State v. Corral, supra.* To show prejudice under that component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her

counsel's deficient performance, the result of the proceeding would have been different. *State v. Corral, supra.* A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *Id.*

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *Id.* The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id.* The determining factor is whether the record is sufficient to adequately review the issue. *Id.* In other words, the record must be sufficient to address the claim without an evidentiary hearing. *Id.*

The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as part of any plausible trial strategy. *Id.* We have generally reached ineffective assistance of counsel claims on direct appeal only in those instances where it was clear from the record that such claims were without merit or in the rare case where trial counsel's error was so egregious and resulted in such a high level of prejudice that no tactic or strategy could overcome the effect of the error, which effect was a fundamentally unfair trial. *State v. Corral*, 318 Neb. 940, 20 N.W.3d 372 (2025). Even when we have expressed skepticism that any reasonable trial strategy could be revealed through an evidentiary hearing, we have held that the record on direct appeal was insufficient to address the ineffective assistance claim. *Id.*

(a) Failing to Object to Double Hearsay

Wonka asserts trial counsel was ineffective by failing to object to a 911 call made by C.O. as the statements made in the call constituted double hearsay.

Wonka assigns trial counsel should have objected on hearsay grounds to the statement C.O. made to the 911 dispatcher. Specifically, Wonka challenges that trial counsel did not bring up the double hearsay issue within the 911 call and that the result of the trial may have been different had the jury not heard the highly emotional 911 call that alleged the perpetrator was Wonka.

Wonka specifically takes issue with the statement made by C.O. on the 911 call that her sister told her that, based on C.O.'s description, the perpetrator was Wonka. Wonka argues that trial counsel should have objected on double hearsay grounds, because C.O. had spoken to her sister and her sister informed her that the likely assailant was Wonka.

Pursuant to Neb. Rev. Stat. § 27-801(3) (Cum. Supp. 2024), "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." See *Clemens v. Emme*, 316 Neb. 777, 7 N.W.3d 166 (2024). Pursuant to Neb. Rev. Stat. § 27-802 (Reissue 2016), hearsay is not admissible unless otherwise provided for in the Nebraska Evidence Rules, Nebraska statutes, or this court's discovery rules. Hearsay included within hearsay, or "double hearsay," is not excluded under the hearsay rule if each part of the combined statement conforms with an exception to the hearsay rule provided in these rules. See *State v. Swartz*, 318 Neb. 553, 17 N.W.3d 174 (2025). In other words, when an out-of-court statement relates the content of another out-of-court statement, there must be an independent hearsay exception for each statement. See *id.*

Statements are not hearsay to the extent they are offered for context and coherence of other admissible statements or to explain the course of a series of events. *State v. Corral, supra.* Similarly, statements are not hearsay if the proponent offers them to show their impact on the listener, and the listener's knowledge, belief, response, or state of mind after hearing the statement is relevant to an issue in the case. *Id.* Under these principles, any objection to the statements Wonka complains of on appeal fail, such that counsel's failure to make such objections was not deficient conduct.

Assuming without deciding that the statement Wonka objects to was double hearsay, it was harmless error because it was cumulative. As the State points out, this statement that Wonka complains of on appeal is cumulative of other testimony that Wonka does not challenge as inadmissible. Where the evidence is cumulative and there is other competent evidence to support the conviction, the improper admission or exclusion of evidence is harmless beyond a reasonable doubt. *State v. Corral*, 318 Neb. 940, 20 N.W.3d 372 (2025). Cumulative evidence means evidence tending to prove the same point to which other evidence has been offered. *Id.*

The statement within the 911 recording at issue, where C.O. says that her sister, Crystal, identified Wonka as the perpetrator, is entirely cumulative of C.O.'s earlier testimony, where she testified to the jury that she did not know who the perpetrator was, only what he looked like and was wearing, until her sister identified him for her. Therefore, any error in admitting the 911 call was harmless beyond a reasonable doubt. Further, there is other evidence to support the jury's conclusion that Wonka was the perpetrator that evening, including Green's testimony about the DNA evidence collected from Wonka's genitalia and boxers and C.O.'s courtroom identification of Wonka as the perpetrator.

We have found that it is not ineffective for trial counsel to "fail" to make a meritless claim. *State v. Swartz, supra*. Counsel cannot be ineffective for not objecting to harmless evidence.

(b) Failing to Object to Prejudicial Statement

Wonka's next assigned error is that trial counsel was ineffective for failing to object to a comment made by Wonka that "if a woman wears a mini skirt, they are asking to get raped."

However, no witness made this alleged statement. Chapek testified that Wonka rejoined Chapek and others after remaining in the house for about 20 minutes. Chapek stated that the group was talking about someone's drinking problem, so Chapek posed a deeper question to Wonka, asking if a rape victim is asking for rape based on what she wears. Wonka made a statement along the lines of "what someone chooses to wear kind of gets them the consequence they're asking for."

On appeal, Wonka argues trial counsel was deficient, and he was prejudiced, through trial counsel's failure to object to Chapek's testimony about the statement Wonka made. Wonka argues that trial counsel should have objected because on the night of the incident C.O. was wearing joggers and a t-shirt rather than more sexually provocative clothing, therefore making the statement irrelevant and prejudicial.

Evidence which is not relevant is inadmissible. *State v. Hernandez*, 299 Neb. 896, 911 N.W.2d 524 (2018). To be relevant, evidence must be probative and material. *Id.* Evidence is probative if it has any tendency to make the existence of a fact more or less probable than it would be without the evidence. *Id.* A fact is material if it is of consequence to the determination of the case. *Id.* Even relevant evidence is not automatically admissible, as it must pass muster under rule

403. See *State v. Hernandez, supra.* Under rule 403, the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *State v. Hernandez, supra.*

Rule 403 considers the danger of unfair prejudice. *State v. Hernandez, supra.* Most, if not all, evidence offered by a party is calculated to be prejudicial to the opposing party. *Id.* In the context of rule 403, unfair prejudice means an undue tendency to suggest a decision based on an improper basis. *State v. Hernandez, supra.* Unfair prejudice speaks to the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on a ground different from proof specific to the offense charged, commonly on an emotional basis. *Id.* When considering whether evidence of other acts is unfairly prejudicial, we consider whether the evidence tends to make conviction of the defendant more probable for an incorrect reason. *Id.*

Wonka's statements, which indicate his lack of empathy for rape victims, do have a tendency to make the existence of a fact more or less probable than it would be without the evidence. His statements about victim blaming do carry some risk of prejudice, but not significant, given the brief nature of the comments. Counsel is not deficient for failing to file a meritless objection; therefore, we conclude that Wonka's trial counsel was not ineffective.

### (c) Failing to File Pretrial Motion to Exclude SANE

Wonka next assigns that his trial counsel was ineffective in failing to file a pretrial motion or object to the admission of the SANE report and testimony about the SANE report. Wonka essentially asserts that the SANE report contained numerous discrepancies and therefore should have been objected to on the basis that the report was unreliable and therefore irrelevant, or at the very least unfairly prejudicial.

However, Wonka failed to identify any actual discrepancies within the SANE report, and we decline to scour the record searching for statements that support Wonka's claim. See *State v. Wood*, 310 Neb. 391, 966 N.W.2d 825 (2021). Appellants are required to state with particularity specific allegations of ineffective assistance of counsel in the assignments of error section of their brief. See *State v. Rupp*, 320 Neb. 502, 28 N.W.3d 74 (2025). Since Wonka had not identified the discrepancies, he has failed to plead this with sufficient particularity.

### (d) Offering C.O.'s Complete Medical Record Into Evidence

Next, Wonka argues that trial counsel was ineffective for offering C.O.'s complete medical record into evidence, claiming it was irrelevant and unfairly prejudicial. Wonka argues exhibit 136 contained definitions and information in the medical record that were different than the jury instructions and could have confused or misled the jury. Wonka asserts that these definitions, instructions, and examples from the hospital form, as well as the services available to the person receiving the examination, varied from the instructions the jury received and were irrelevant and prejudicial.

We find that Wonka has failed to show by a reasonable probability that his outcome at trial would have been different had the jury simply not seen the full medical record. The jury was instructed on the law and provided the necessary definitions. Absent evidence to the contrary, it is presumed that a jury followed the instructions given in arriving at its verdict. *State v. Barnes*, 317

Neb. 517, 10 N.W.3d 716 (2024). Therefore, we find that trial counsel was not deficient in offering the complete medical record into evidence and that this did not prejudice the defendant.

### (e) Failing to Object to Testimony About DNA Evidence

Next, Wonka assigns and argues that counsel was ineffective for failing to object to expert testimony that the expert could not conclude with certainty that Wonka's DNA was not included within a sample from C.O.'s mons pubis. During Green's testimony regarding DNA, she stated she found C.O. to be a major contributor, but that she could not make any conclusions regarding the minor contributor.

Even if Green's testimony suggested that she could not exclude or include Wonka, any error was harmless. Harmless error review looks to the basis on which the jury actually rested its verdict; the inquiry is not whether in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the actual guilty verdict rendered was surely unattributable to the error. *State v. Johnson*, 290 Neb. 862, 862 N.W.2d 757 (2015). While it could be true that jurors speculated as to whether Wonka could be a minor contributor, in the context of the overwhelming evidence of guilt, we conclude that the verdict was surely unattributable to speculation. Other than the DNA evidence collected from C.O.'s mon pubis, there was DNA evidence collected from Wonka's genitalia and boxers that Green testified contained both Wonka and C.O.'s DNA. Outside of DNA evidence, C.O. identified Wonka as her rapist at trial and identified Wonka as her rapist almost immediately after it occurred, which was recorded on both body camera footage and an audio recording.

There is not a reasonable probability that the outcome of the trial would have been different had counsel objected. Even if counsel's performance had been deficient, there was no dispute at trial that Wonka had sex with the victim or that the victim's DNA was on Wonka's genitals and underwear. Therefore, we cannot find trial counsel to be ineffective for harmless error.

### (f) Eliciting Testimony About Previous Sexual Assault

Wonka next assigns that trial counsel was deficient for eliciting testimony from Crystal on cross-examination about her alleged sexual assault perpetrated by Wonka. He contends that such testimony was affirmative evidence that he had a history of sexually assaulting women.

Trial counsel's decisions that amount to a reasonable trial strategy do not constitute deficient performance. *State v. Portillo*, 33 Neb. App. 660, 22 N.W.3d 679 (2025). Decisions about whether to engage in cross-examination, and, if so, to what extent and in what manner, are strategic in nature and generally will not support an ineffective assistance claim. *Id.* We do not use perfect hindsight to criticize unsuccessful trial strategies or second-guess trial strategy. *Id.* However, the Supreme Court has cautioned that "it is more the exception than the rule that defense counsel's strategy can be reasonably inferred from the trial record on direct appeal." *State v. Wood*, 310 Neb. 391, 431, 966 N.W.2d 825, 855 (2021).

We determine that the record is sufficient to determine Wonka's trial counsel exercised reasonable professional judgment in cross-examining the victim's sister for impeachment purposes. The record demonstrates that trial counsel had a strategy in this line of questioning that cast doubt on the witness' credibility. Therefore, this assignment of error fails.

### (g) Not Filing Motion to Suppress

Next, Wonka argues that his trial counsel was ineffective for failing to file a motion to suppress items seized from Wonka pursuant to a court order or warrant that is not a part of the record. Wonka assigns that the affidavit used to obtain the court order or warrant contained false statements. Wonka also asserts that the court order or warrant lacked particularity and was overbroad. Additionally, Wonka contends that it is invalid, as it was issued by a county court judge from the county court for Saunders County and was executed while Wonka was in a hospital in Douglas County.

Because the court order or warrant is not located within the record, we determine that the record is not sufficient to address this claim on direct appeal, but it is preserved for purposes of postconviction review.

### (h) Failing to Call Character Witnesses

Wonka next assigns that trial counsel was ineffective for failing to call character witnesses who would have testified that the victim in this case had a reputation for dishonesty.

When the claim of ineffective assistance on direct appeal involves uncalled witness, vague assertions that counsel was deficient for failing to call "witnesses" are little more than placeholders and do not sufficiently preserve the claim. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). However, the appellate court does not need specific factual allegations as to what the person or persons would have said, which will not be found in the appellate record. *Id.* It is sufficient that appellate counsel gives on direct appeal the names or descriptions of any uncalled witnesses forming the basis of a claim of ineffective assistance of trial counsel. *Id.* Such specificity is necessary so that the postconviction court may later identify whether a particular claim of failing to investigate a witness is the same one that was raised on direct appeal. *Id.*

In *State v. Rupp*, 320 Neb. 502, 28 N.W.3d 74 (2025), the Nebraska Supreme court held that when the claim of ineffective assistance on direct appeal involves uncalled witnesses, the defendant must give the names or descriptions of any uncalled witnesses forming the basis of a claim of ineffective assistance of trial counsel.

Wonka alleges that his trial counsel was ineffective as she failed to call character witnesses who had a substantial history with C.O. and could have testified to C.O.'s reputation for dishonesty, previous dishonest statements, or dishonest behavior. That allegation does not conform with the directive that appellate counsel must give on direct appeal at least the names or descriptions of any uncalled witnesses forming the basis of ineffective assistance of trial counsel. See *State v. Rupp, supra.*

Stated differently, Wonka identified a category of ineffective assistance without specifically identifying the witnesses his counsel should have called. Accordingly, this claim fails.

### (i) Advising Wonka Not to Testify

Lastly, Wonka argues that trial counsel was ineffective for advising him not to testify, asserting that he wanted to testify to explain that the sexual penetration was consensual.

Defense counsel's advice to waive the right to testify can present a valid claim on ineffective assistance of counsel in two instances: (1) if the defendant shows that counsel interfered with his or her freedom to decide to testify or (2) if counsel's tactical advice to waive the right was

unreasonable. *State v. Golyar*, 301 Neb. 488, 919 N.W.2d 133 (2018). Wonka does not claim that trial counsel interfered with his freedom to testify; rather, he claims that counsel "advised him not to testify." Brief for appellant at 25. He argues that he wanted to provide an explanation for some evidence; however, there is no evidence within the record as to the substance of trial counsel's advice on that point. Accordingly, we conclude the record is insufficient to address this claim on appeal. See *State v. Roebuck*, 31 Neb. App. 67, 976 N.W.2d 218 (2022).

## VI. CONCLUSION

For the reasons explained above, we reject Wonka's assignment of error challenging the admissibility of evidence. The record is not sufficient to address two of Wonka's ineffective assistance of counsel claims and those two claims are preserved. The remaining ineffective assistance of counsel claims fail. We affirm Wonka's conviction and sentence.

AFFIRMED.