Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/17/2023 09:04 AM CDT

Benjamin S., appellee, v.
Crystal S., appellant.

___ N.W.2d ___

Filed March 17, 2023.    No. S-22-123.

1. **Parental Rights: Judgments: Appeal and Error.** Termination of
   parental rights cases raised under Neb. Rev. Stat. § 42-364(5) (Cum.
   Supp. 2022) are reviewed de novo on the record, and an appellate
   court is required to reach a conclusion independent of the lower
   court's findings.
2. **Evidence: Appeal and Error.** When the evidence is in conflict, the
   appellate court will consider and give weight to the fact that the lower
   court observed the witnesses and accepted one version of the facts over
   the other.
3. **Parental Rights.** Whereas statutory grounds are based on a parent's past
   conduct, the best interests inquiry focuses on the future well-being of
   the child.
4. **Parental Rights: Presumptions.** There is a rebuttable presumption
   that it is in the child's best interests to share a relationship with his or
   her parent.
5. **Parental Rights: Words and Phrases.** Parental unfitness means a
   personal deficiency or incapacity that has prevented, or will probably
   prevent, performance of a reasonable parental obligation in child rear-
   ing and that has caused, or probably will result in, detriment to a child's
   well-being.

Appeal from the District Court for Cheyenne County:
Randin R. Roland, County Judge. Reversed and remanded
for further proceedings.

Michael D. Samuelson, of Reynolds, Korth & Samuelson,
P.C., L.L.O., for appellant.

Sterling T. Huff, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Papik, J.

Benjamin S. filed a motion asking that the parental rights of Crystal S., his ex-wife, be terminated. Following a trial, the district court terminated Crystal's parental rights. Crystal appeals. Because we find that the record does not contain clear and convincing evidence that termination of Crystal's parental rights is in the children's best interests, we reverse the order of termination and remand the cause for further proceedings.

BACKGROUND

*Dissolution Decree.*

Benjamin and Crystal have three children, born in 2011, 2012, and 2014, respectively. Benjamin and Crystal married in 2014, and Benjamin filed for dissolution the following year. The district court entered the dissolution decree on September 21, 2015.

The decree awarded Benjamin full legal and physical custody of the children. Crystal received parenting time under the decree every Wednesday evening and every other Saturday. The decree required Crystal's visits to be supervised and ordered that they would remain supervised until Crystal provided the district court with an affidavit and treatment plan from a mental health provider stating that Crystal was not a threat to herself or her children and that she was completing a program to address drug and alcohol addiction.

The decree also required Crystal to be sober during visitation with the children and to abstain from consuming drugs or alcohol beforehand. It ordered the parties to "use those family members that have been willing to assist in supervision of this parenting time since the entry of the temporary orders in this matter. This would include [Crystal's uncle], as long as he is willing to so supervise the parenting time."

The decree also awarded Crystal telephonic parenting time during designated timeframes for 3 hours a week, total. It ordered Crystal to place the call and Benjamin or the children to answer it.

The decree required each parent to inform the other of the children's extracurricular activities so that each could participate, where possible and appropriate, and each parent was given the right to attend school functions. The decree required each party to execute any documents needed to give the other parent access to school records.

The decree further ordered Crystal to pay Benjamin child support of $764 per month; 50 percent of any childcare expenses resulting from Benjamin's employment, training, or education; and 50 percent of medical and/or dental expenses in excess of $480 per year per child not paid by insurance. Regarding child support, the decree provided that Crystal's income from all sources was immediately subject to statutory withholding. It directed child support payments to be made to the Nebraska Child Support Payment Center and payments for medical or childcare expenses to be made to the person demanding reimbursement or, for unpaid bills, the provider of the services.

*Requests for Modification and Termination
of Parental Rights.*

Neither party made any additional filings in the matter until August 11, 2020. On that date, Crystal, representing herself, filed a form complaint for modification of custody or parenting plan. In a handwritten attachment to the form complaint, she asserted that she desired to be a part of her children's lives, but that Benjamin was preventing her from doing so by not following aspects of the dissolution decree. In particular, she asserted that she had not been able to visit the children since January 2016. Crystal alleged that Benjamin had not allowed her to have in-person parenting time, communication with the children, or information about them, as ordered by

the decree. Crystal alleged that Benjamin had conditioned her communication with the children on sexual favors and had blocked her calls when she refused to provide those favors. She admitted to past mistakes, but claimed that she had been "clean" for 1 year, that she had completed classes required by the decree, and that she was attending intensive outpatient counseling. She stated that she was presently living in a halfway house in Colorado, but would soon be moving to Sidney, Nebraska, where the children resided with Benjamin. Crystal requested that the court order telephonic video chats with the children during the time she remained at the Colorado halfway house.

On October 16, 2020, Benjamin filed a responsive pleading. Generally, he denied Crystal's allegations that he had not complied with the decree. He asked the district court to modify the decree to require Crystal to disclose her criminal history, to provide records related to her mental health and any drug and alcohol counseling, and to require that Crystal's parenting time be "integrated through a licensed mental health practitioner." In the alternative, Benjamin requested termination of Crystal's parental rights, pursuant to Neb. Rev. Stat. § 42-364(5) (Cum. Supp. 2022).

A trial on the issue of whether Crystal's parental rights should be terminated was held in the district court in December 2021.

*Evidence at Trial.*

At trial, both parties were represented by counsel, and Crystal had a guardian ad litem. The State was notified of the proceeding but did not participate. Only three witnesses testified at trial: Crystal, Benjamin, and Crystal's mother.

Crystal testified that when she lost custody of her children as a result of the September 2015 dissolution decree, "[her] life fell apart." On the day the decree was issued, she quit her job. She admitted that, at that time, her preexisting problems with alcohol and drugs worsened and that, in

the following years, she was charged and convicted of many criminal offenses in both Nebraska and Colorado.

In October 2015, she was charged with criminal imperson-ation, driving under suspension, possession of "K2 marijuana," possession of drug paraphernalia, and an open container viola-tion. These charges were dismissed pursuant to a plea agree-ment. In September 2017, she was charged with possession of a controlled substance and driving under the influence. These charges were also resolved via a plea agreement under which Crystal pleaded guilty to attempted possession of a metham-phetamine pipe. Also in 2017, Crystal was charged in Colorado with disorderly conduct, harassment, attempt to influence a public servant, criminal impersonation, driving while impaired, and driving without a license. Pursuant to a plea agreement, Crystal pleaded guilty to harassment, criminal impersonation, and driving while impaired, and the remaining charges were dismissed. Crystal was sentenced to probation.

Crystal did not have a job from September 2015 until some-time in 2018 and then only briefly held employment. She tes-tified that during this period of unemployment, she was "just messing up" her life. She sold all her possessions and lived with a boyfriend who supported her financially. Crystal admit-ted that she had very little contact with the children during this time. She testified that the last time she spent time with her children was during a supervised visit in January 2016.

Crystal was arrested in Colorado in August 2019 for vio-lations of probation. At the time of her arrest, a controlled substance, Suboxone, was discovered in her vehicle. She tes-tified that this was the last time she used drugs or alcohol. Later that month, she was sentenced to 2 years' imprisonment in Colorado.

Crystal testified that after 6 months in prison, she was placed in a halfway house. While at the halfway house, she worked at a fast-food restaurant up to 30 hours per week. Crystal testified that all her drug tests at the halfway house were negative and that she reported this to Benjamin at the

time. On August 11, 2020, while living at the halfway house, Crystal filed her complaint for modification.

Crystal testified that at the end of September 2020, she moved to Kimball, Nebraska. There, she obtained full-time employment, as well as additional part-time jobs. According to Crystal, her full-time employer required drug tests, and all her tests were negative.

At the time of trial, Crystal had been living in Sidney for approximately 2 months with her brother. She continued to commute to her job in Kimball, but, due to the move, shifted to a part-time position. She admitted that at the time of trial, she was facing a charge of disturbing the peace in Kimball County.

Crystal testified that she had learned that sometime in the year preceding trial, Benjamin's girlfriend, who resided with Benjamin and the children, received 18 months' probation for assaulting one of the parties' children. Crystal said that when she found out, she "dropped to the floor crying." She described herself as "heartbroken," knowing she could not be there.

Crystal testified that in August 2021, she presented the dissolution decree to the children's school and asked for information about them. Crystal testified that the school refused to release information to her and told her she needed an "up-to-date" decree. Crystal also recalled trying to attend a Christmas program at her children's school the week before trial. She testified that she was told to leave.

At the time of trial, Crystal had never made any child support payments, and her arrears had accrued to over $61,000. She admitted that she was aware of her responsibility to pay child support as set forth in the decree and that, at some points, she had the ability to make some support payments. Crystal explained that she thought her payments were automatically taken out of her employment checks. Due to direct deposit, she never saw any of her paystubs, but she "never really paid attention." She admitted that she did not ask any of her

employers to garnish her wages and did not ask the State of Nebraska about the matter.

Regarding medical and daycare expenses, Crystal did not dispute that she had made no contributions. She testified that she did not know where the children were in daycare or what the children's medical needs were and that she had made offers to pay medical and daycare expenses, but Benjamin declined her offers and kept changing his contact information. Crystal testified that she attempted to apply for Medicaid for the children, but she discovered that they were already covered through Benjamin's girlfriend.

Crystal denied intentionally staying out of her children's lives. She did not dispute that she had not participated in supervised visitation with the children since January 2016. She recalled, however, that she asked Benjamin to see the children between 2016 and 2019 and that her attempts to see them resulted in restraining orders against her that were later "dropped." She also testified that her uncle, who was mentioned in the decree as a party approved to supervise her visitation, had been uncooperative when she had asked for visitation. She testified that she had obtained information about the children from her uncle on some occasions.

Crystal testified that near the end of 2017, she and Benjamin started talking to each other. She testified that these conversations later led to several in-person meetings. Crystal stated that she asked Benjamin to bring the children to their meetings and that Benjamin told her he would let her see the children or provide current pictures of them if he observed changes in Crystal. During some meetings, Crystal and Benjamin engaged in sexual activities. Crystal testified that after Benjamin still refused to allow her to see the children or provide pictures of them, she realized she had been "sleeping with him for nothing."

Crystal also testified to her efforts to see the children after she was released from prison. She testified that because she did not have Benjamin's phone number, she contacted him

via Facebook during this time. According to Crystal, Benjamin would occasionally respond to her Facebook messages, but if she asked to see the children, he would ignore the question or "block" her. Crystal also testified that after Benjamin was served with her complaint to modify, he "blocked" her. Crystal testified that she had asked Benjamin to tell the children she loved them and missed them and to pass along birthday wishes to them, and he would respond, "Okay," without sharing information about the children in return, despite Crystal's requests. Crystal recalled that if she asked Benjamin for pictures, he would make excuses for not providing them or provide outdated pictures.

Crystal admitted that from the dissolution in September 2015 until her incarceration in August 2019, she was an unfit parent. She testified that this was due in part to her alcohol abuse and that at that time, she had untreated manic depression. Crystal acknowledged that the children did not know who she was at the time of trial, but she testified that she wanted to reestablish her relationship with them and was willing to participate in supervised visitation to do so. She believed that at the time of trial, her lifestyle had changed and she could be a "beneficial parent."

Crystal explained that since August 2019, she had taken steps to improve herself, remained clean and sober, and was taking her prescribed medication, which helped with her mental health condition. She had also successfully completed parole in May 2021 without violations. Crystal stated that in Colorado, she completed a course of intensive outpatient counseling and the parenting and drug classes required by the decree. The classes Crystal completed included strategies of self-improvement related to drugs and alcohol and to learning about herself and the impact of the things she had done. Crystal acknowledged that she had not filed an affidavit from a mental health provider to obtain unsupervised visitation as provided in the decree.

Crystal testified that her past lifestyle is something that she "wouldn't want to go through again." Reflecting on it gave her "a big knot in [her] stomach" because if "[she] could have done better, [she] would have." Crystal stated, "I hate myself for it because I wouldn't be right here today if I changed." Crystal testified that she was not in counseling at the time of trial due to her move and that her last evaluation at the halfway house did not recommend ongoing individual counseling.

Benjamin testified that he interfered with Crystal's efforts to see the children after the divorce because of her continuing drug and alcohol abuse, but that after the third supervised visit in 2016, she stopped attending. Benjamin testified that Crystal had asked to see the children about three or four times afterward, but she failed to show up. Benjamin did not know how many times Crystal asked her uncle to arrange supervised visitation after that, but he testified that she never asked Benjamin.

Benjamin testified that although he and Crystal had met and had sex after the divorce, he did not promise her that it would result in her being allowed to see the children or pictures of them. According to Benjamin, there were only a couple of encounters, there was no communication about what was going in his life or hers, and he regretted the encounters.

Benjamin testified that he had maintained the same job since 2015 and the same cell phone number. Benjamin testified that Crystal knew this cell phone number, and he denied blocking her calls. He admitted blocking Crystal on Facebook, having decided she should contact him through phone calls or text messages rather than social media. Benjamin agreed that the decree did not require Crystal to contact him via telephone.

Benjamin testified that one of the parties' children, who was age 6 at the time, became nervous and upset when Crystal came to a school Christmas program shortly before trial and began asking her questions. Benjamin explained the

child had not seen Crystal since the child was 8 months old and consequently did not know her. Benjamin testified that because the child was nervous and upset about the encounter, the child could not participate in the Christmas program. On cross-examination, Benjamin admitted that he had not witnessed this encounter.

Benjamin testified that he was home every evening after work and that he took care of all the children's needs, including making sure they got to and from school and were supervised during the summer break. Benjamin testified that when the children have asked about Crystal, he has told them that she still loves them. According to Benjamin, Crystal's prolonged absence has not affected the children. He described them as "pretty happy, healthy," and successful in school.

Benjamin testified that the children lived with him, his girlfriend, and his girlfriend's son. Benjamin admitted that in 2017, a juvenile action was opened in which there was an allegation that one of the parties' children was a neglected child. Benjamin explained that Crystal was not a party to the action, but he was. He testified that the action was dismissed as a result of a plea agreement, the terms of which he did not recall. When asked whether his girlfriend was convicted of child abuse the same year, Benjamin responded that "they cleared it up . . . through the court." Benjamin also admitted at trial that he was not a legal permanent resident of the United States. We have disregarded Benjamin's attempt, made after oral argument in this court, to submit new information not contained in the record on appeal regarding his immigration status.

Benjamin denied ever receiving child support from Crystal or reimbursement for medical bills or daycare since 2015, and he denied that Crystal had offered to make financial contributions toward any of the children's needs. Benjamin testified that he had never refused financial support from Crystal, noting that child support was set up through the State of Nebraska.

Crystal's mother testified that she was familiar with Crystal's efforts to see her children since 2016 and to improve her situation, and she generally corroborated Crystal's account. A few months before trial, Crystal's mother moved to Sidney from another state to support Crystal, who was depressed about not having contact with her children.

*Order Terminating Parental Rights.*

The trial court found that, as to all three children, clear and convincing evidence supported three of the statutory grounds for termination alleged by Benjamin: that she had abandoned the children under Neb. Rev. Stat. § 43-292(1) (Reissue 2016), that she had substantially and continuously or repeatedly neglected and refused to give the children necessary care and protection under § 43-292(2), and that she had willfully neglected to provide the children the necessary subsistence, education, or other care necessary for their health, morals, or welfare under § 43-292(3). Based on Crystal's efforts after being incarcerated in Colorado, the district court found that there was not clear and convincing evidence that she was "unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior, which conduct is found by the court to be seriously detrimental to the health, morals, or well-being" of her children for purposes of § 43-292(4). The district court also found that there was not clear and convincing evidence that Crystal was unable to discharge parental responsibilities because of mental illness or mental deficiency and that such condition would continue for a prolonged indeterminate period for purposes of § 43-292(5).

Having found statutory grounds for termination, the district court proceeded to analyze whether termination of Crystal's parental rights would be in the best interests of the children. In the course of analyzing that issue, the district court discussed the children's current living situation with Benjamin and his girlfriend. The district court acknowledged the evidence

that Benjamin's girlfriend was "convicted of negligent child abuse involving [one of the children] in 2017," but observed that thereafter, "the family has remained together." Primarily emphasizing the number of years that had passed since Crystal had meaningful contact with the children, the district court went on to find that termination would be in the children's best interests and granted Benjamin's motion. The district court did not expressly analyze whether Crystal was presently unfit to exercise parental rights.

Crystal appeals.

## ASSIGNMENTS OF ERROR

Crystal assigns, condensed and restated, that the trial court erred in determining (1) that statutory grounds existed to terminate her parental rights under § 43-292(1) (abandonment), § 43-292(2) (willful neglect), and § 43-292(3) (lack of financial support), and (2) that terminating her parental rights was in the children's best interests.

## STANDARD OF REVIEW

[1,2] Termination of parental rights cases raised under § 42-364(5) are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the lower court's findings. See *Wayne G. v. Jacqueline W.*, 288 Neb. 262, 847 N.W.2d 85 (2014). However, when the evidence is in conflict, the appellate court will consider and give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id.*

## ANALYSIS

Although Crystal initiated this matter as a modification proceeding, Benjamin's responsive pleading placed termination of Crystal's parental rights "in issue." See § 42-364(5). In such cases, the Nebraska Juvenile Code governs the question of termination. See § 42-364(5). Under the Nebraska Juvenile Code, terminating parental rights requires both clear and convincing evidence that one of the statutory grounds

enumerated in § 43-292 exists and clear and convincing evidence that termination is in the best interests of the children. See § 43-292. See, also, *In re Interest of Donald B. & Devin B.*, 304 Neb. 239, 933 N.W.2d 864 (2019). Clear and convincing evidence means the amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved; clear and convincing evidence is more than a preponderance of the evidence, but less than proof beyond a reasonable doubt. See *In re Interest of Justine J. & Sylissa J.*, 288 Neb. 607, 849 N.W.2d 509 (2014).

Crystal's first several assignments of error challenge the district court's determination that Benjamin proved three statutory grounds for termination. However, given the evidence regarding Crystal's actions in the years immediately following the entry of the dissolution decree, the district court's determination that there were statutory grounds for termination does not appear to be unfounded. In particular, it would be difficult, in light of the evidence described in the background section above, to conclude that the district court erred in finding clear and convincing evidence that Crystal "substantially and continuously or repeatedly neglected and refused to give [the children] necessary parental care and protection" pursuant to § 43-292(2) or that, "being financially able," Crystal neglected to pay for the children's "subsistence, education, or other care" as ordered by the court, pursuant to § 43-292(3).

Given the evidence that Crystal has more recently demonstrated an interest in being a part of her children's lives, she may have a stronger argument that the district court erred by finding that she, for purposes of § 43-292(1), "abandoned the juvenile for six months or more immediately prior to the filing of the petition." See *In re Interest of Gabriella H.*, 289 Neb. 323, 329, 855 N.W.2d 368, 374 (2014) (abandonment for 6 months preceding termination motion pursuant to § 43-292(1) requires evidence of "a settled purpose to be rid of all parental obligations and to forgo all parental rights, together with a complete repudiation of parenthood and an

abandonment of parental rights and responsibilities"). That said, we find it ultimately unnecessary to determine whether any of the district court's findings regarding statutory grounds were correct. As we see it, this case turns on Crystal's final assignment of error—that the district court erred by finding that termination of her parental rights was in the children's best interests.

[3] As noted above, Crystal's parental rights could be terminated only if there was both clear and convincing evidence of at least one statutory ground for termination and clear and convincing evidence that termination is in the best interests of the children. Whereas statutory grounds are based on a parent's past conduct, the best interests inquiry focuses on the future well-being of the child. *In re Interest of Mateo L. et al.*, 309 Neb. 565, 961 N.W.2d 516 (2021). "While proof of the former will often bear on the latter, a court may not simply assume that the existence of a statutory ground for termination necessarily means that termination would be in the best interests of the child." *Kenneth C. v. Lacie H.*, 286 Neb. 799, 811, 839 N.W.2d 305, 314 (2013).

[4,5] Proving that termination would be in the best interests of the child is a high hurdle because a parent's right to raise his or her children is constitutionally protected. See *In re Interest of Mateo L. et al., supra*. See, also, *Kenneth C. v. Lacie H., supra*, citing *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). Therefore, we apply a rebuttable presumption that it is in the child's best interests to maintain a relationship with his or her parent. *In re Interest of Mateo L. et al., supra*. In termination proceedings initiated by the State, this presumption can be overcome by proof of parental unfitness. See, *Kenneth C. v. Lacie H., supra*; *In re Interest of Xavier H.*, 274 Neb. 331, 740 N.W.2d 13 (2007). "That is no less true where, as here, one parent asks a court to terminate the other parent's rights with respect to their child." *Kenneth C. v. Lacie H.*, 286 Neb. at 811, 839 N.W.2d at 314. Parental unfitness means a personal deficiency or incapacity

that has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and that has caused, or probably will result in, detriment to a child's well-being. *In re Interest of Mateo L. et al., supra*. Benjamin's counsel acknowledged at oral argument that for Crystal's parental rights to be terminated, he had to demonstrate that she was unfit.

Benjamin adduced a great deal of evidence that from the time the dissolution decree was entered in December 2015 until the time Crystal began her incarceration in Colorado in August 2019, Crystal was not able to meet her basic obligations as a parent. The evidence shows that during this time, Crystal's life was characterized by drug and alcohol abuse, unemployment, and unlawful behavior, as well as failures to comply with clear directives in the dissolution decree. Indeed, by Crystal's own admission, she was an unfit parent at that time. But although there is considerable evidence that Crystal was previously incapable of fulfilling her parental obligations, there is very little evidence in the record that tended to show that, at the time of trial, Crystal was an unfit parent.

In fact, to the extent that there is any evidence in the record about Crystal's fitness as a parent at the time of trial, it reflects that in the months and years following her incarceration, she had sought to make personal improvements and made progress. The evidence shows that after her arrest, she became and remained sober. She completed classes to learn strategies of self-improvement related to drugs and alcohol and to learn about herself and the impact of the things she had done. She attended intensive outpatient counseling. She took the medication prescribed for her mental health condition. She obtained and kept employment. She expressed interest in seeing the children in both her complaint to modify and in Facebook messages to Benjamin. And at trial, she expressed regret about her past mistakes and recognized their negative effect on her relationship with her children. No witness, other

than Crystal herself, testified about her parental fitness, and Crystal believed that at the time of trial, she was fit.

Not only does the record lack evidence of Crystal's unfitness as of the time of trial, there is also relatively little evidence that tends to show that termination of Crystal's parental rights was in the children's best interests. Benjamin could obtain an order of termination only if he showed that termination would be in the children's best interests, and yet, the children are little more than faint outlines in this record. Information about the children consisted of Benjamin's conclusion that he was meeting their basic needs and that they were "pretty happy, healthy," and doing well in school. There was some testimony that the children did not know Crystal and that one of the children had become upset when Crystal attended a Christmas program as the decree authorized her to do. There was no firsthand evidence about this incident, however, and no testimony, expert or otherwise, about the children's attitudes toward Crystal generally or how termination of Crystal's parental rights, or, alternatively, a newly established relationship with her, might affect them. The record also lacked specific evidence about whether the children were bonded to Benjamin, other family in the area, or anyone else.

Although the evidence pertaining directly to the children was minimal, there was other evidence in the record regarding the children's present living situation that, in our view, cuts against termination of Crystal's parental rights. As noted above, at the time of trial, the children lived with Benjamin and his girlfriend. Crystal testified that Benjamin's girlfriend had been placed on probation as a result of allegations that she assaulted one of the children. Benjamin did not dispute that his girlfriend was convicted of child abuse and admitted that the issue was "cleared [up] through the court." Further, Benjamin admitted at trial that he is not a legal permanent resident of the United States. We acknowledge that the record does not disclose additional details regarding abuse allegations against Benjamin's girlfriend or Benjamin's immigration

status. Even so, in considering whether it is in the children's best interests to "judicial[ly] foreclos[e]" any future relationship with and support from Crystal, this evidence regarding the children's other parent and their living situation with him gives us pause. See *Kenneth C. v. Lacie H.*, 286 Neb. 799, 813, 839 N.W.2d 305, 315 (2013).

For his part, Benjamin disputes Crystal's contention that he failed to show that she was unfit or that termination was in the children's best interests. In support of this position, he identifies the fact that, after a handful of supervised visits in 2016, Crystal has been absent from the children's lives; the evidence of Crystal's prior drug use and criminal convictions; and the fact that even after she filed her complaint to modify, she has failed to meet her child support and other obligations set forth in the decree. As we will explain, we find Benjamin's arguments unavailing.

We have acknowledged Crystal's past mistakes and additionally acknowledge that Crystal has had little to no contact with the children since 2016. On this record, however, we do not attribute the same significance to these facts for purposes of the unfitness or best interests inquiries that Benjamin does. We believe this to be consistent with our precedent. In *Kenneth C. v. Lacie H.*, 286 Neb. at 813, 839 N.W.2d at 315, a child's unmarried parents had a "brief, stormy" relationship, in which the father, among other things, held a knife to the mother in the presence of the child. For years afterward, the father had no contact with the child and provided no financial support. When the father later initiated paternity proceedings and requested visitation with the child, the mother asked that the father's parental rights be terminated and prevailed in district court. On appeal, we agreed that the mother had demonstrated statutory grounds for termination. We likewise recognized that the father had not fulfilled his parental obligations in the past, that there were concerns about his prior behavior, and that the father was, at that time, a stranger to the child. Even so, we found no evidence that the father was

presently unfit and no explanation of how the child's best interests would be served by cutting off the possibility of any future parental relationship.

As for Crystal's failure to meet her support obligations even after her release from prison and the filing of her complaint to modify, we do not excuse either this noncompliance with the dissolution decree or the alleged acts that led to her more recent disturbing the peace charge. This limited evidence regarding Crystal's actions in the years immediately preceding trial, however, does not persuade us that she is presently an unfit parent or that termination is in the children's best interests.

Prior to concluding, we find it important to emphasize the precise question before us and thus the relatively narrow grounds for our decision in this case. We are not presented with the question of whether Crystal's parenting time should be expanded or made unsupervised, let alone whether she should have physical or legal custody of the children. Neither do we have before us Benjamin's request that additional restrictions be placed on Crystal's parenting time. Rather, the sole question before us in this appeal is whether Crystal's parental rights, limited as they were already by the dissolution decree, should be permanently terminated. To affirm the district court's decision on this point, we would have to find, in our de novo review, evidence producing a firm belief or conviction that Crystal is unfit to have parental rights and that permanent termination of her parental rights is in the best interests of the children. For the reasons we have discussed in this opinion, we do not find such evidence in this record. On this basis, we reverse the district court's termination decision.

We express no view regarding the parties' respective requests to modify the decree or how the district court might structure a modified parenting plan within the context of modification proceedings. We also acknowledge the passage of time since the parties filed their respective requests for modification and observe that this opinion should not be

understood to preclude the district court from permitting the parties to amend their earlier requests for modification to account for intervening factual developments.

## CONCLUSION

Because we conclude that there was not clear and convincing evidence that terminating Crystal's parental rights was in the children's best interests, we reverse the termination order and remand the cause to the district court for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.