Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/31/2026 08:08 AM CDT

**State of Nebraska, appellee, v. Robert L.
Hearnes, Sr., appellant.**

___ N.W.3d ___

Filed March 31, 2026.    No. A-24-753.

1. **Trial: Joinder: Appeal and Error.** A trial court's ruling on a motion for
   consolidation of prosecutions properly joinable will not be disturbed on
   appeal absent an abuse of discretion.
2. **Rules of Evidence: Appeal and Error.** Where the Nebraska Evidence
   Rules commit the evidentiary question at issue to the discretion of the
   trial court, an appellate court reviews the admissibility of evidence for
   an abuse of discretion.
3. **Hearsay: Appeal and Error.** Apart from rulings under the residual
   hearsay exception, an appellate court reviews for clear error the factual
   findings underpinning a trial court's hearsay ruling and reviews de novo
   the court's ultimate determination to admit evidence over a hearsay
   objection or exclude evidence on hearsay grounds.
4. **Hearsay.** Whether a statement was both taken and given in contempla-
   tion of medical diagnosis or treatment is a factual finding made by the
   trial court in determining the admissibility of the evidence.
5. **Effectiveness of Counsel: Appeal and Error.** Whether a claim of inef-
   fective assistance of trial counsel may be determined on direct appeal is
   a question of law.
6. ____: ____. In reviewing claims of ineffective assistance of counsel on
   direct appeal, an appellate court decides only whether the undisputed
   facts contained within the record are sufficient to conclusively deter-
   mine whether counsel did or did not provide effective assistance and
   whether the defendant was or was not prejudiced by counsel's alleged
   deficient performance.
7. **Criminal Law: Trial: Joinder.** Joinder of multiple offenses for a
   single trial is favored and is the rule rather than the exception in crimi-
   nal cases.

8. **Trial: Joinder: Appeal and Error.** Whether offenses were properly joined involves a two-stage analysis: (1) whether the offenses were sufficiently related so as to be joinable and (2) whether the joinder was prejudicial to the defendant.

9. **Criminal Law: Joinder: Presumptions.** A clear presumption exists in favor of a joinder of offenses and against severance.

10. **Trial: Joinder: Proof.** A defendant opposing joinder of charges must meet a high burden of proving prejudice. To carry that burden, the defendant must show compelling, specific, and actual prejudice.

11. **Evidence: Other Acts: Time.** The question whether evidence of other conduct is too remote in time is largely within the discretion of the trial court. While remoteness in time may weaken the value of the evidence, such remoteness does not, in and of itself, necessarily justify exclusion of the evidence.

12. **Evidence: Hearsay: Proof.** Statements having a dual medical and investigatory purpose are admissible only if the proponent of the statements demonstrates that (1) the declarant's purpose in making the statements was to assist in the provision of medical diagnosis or treatment and (2) the statements were of a nature reasonably pertinent to medical diagnosis or treatment by a medical professional.

13. **Evidence: Intent.** There need not be direct evidence of a declarant's state of mind; instead, the appropriate state of mind of the declarant may be reasonably inferred from the circumstances.

14. **Intent.** Whether the circumstances warrant inferring an appropriate state of mind is necessarily a fact-specific determination.

15. **Indictments and Informations.** An information must inform the accused with reasonable certainty of the crime charged so that the accused may prepare a defense to the prosecution and, if convicted, be able to plead the judgment of conviction on such charge as a bar to a later prosecution for the same offense.

16. ____. A trial court, in its discretion, may permit a criminal information to be amended at any time before verdict or findings if no additional or different offense is charged and the substantial rights of the defendant are not prejudiced.

17. **Appeal and Error.** An assignment of error is specific when it addresses a specific issue that does not require additional information to understand precisely what the assignment attacks.

18. **Effectiveness of Counsel: Appeal and Error.** To preserve an ineffective assistance of counsel claim on direct appeal, the claim must be stated with particularity in the assignment of error and then separately argued.

19. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court.

20. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel, the defendant must show that his or her counsel's performance was deficient and that this deficient performance prejudiced the defendant's defense.

21. \_\_\_\_: \_\_\_\_. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.

22. \_\_\_\_: \_\_\_\_. To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.

23. **Effectiveness of Counsel: Words and Phrases.** A reasonable probability of prejudice from ineffective assistance of counsel is a probability sufficient to undermine confidence in the outcome.

24. **Effectiveness of Counsel.** Speculation alone does not support a claim for ineffective assistance of counsel.

Appeal from the District Court for Douglas County: KIMBERLY MILLER PANKONIN, Judge. Affirmed.

Jerry M. Hug, of Hug & Jacobs, L.L.C., for appellant.

Michael T. Hilgers, Attorney General, and Melissa R. Vincent for appellee.

WELCH and FREEMAN, Judges.

FREEMAN, Judge.

## INTRODUCTION

Following a jury trial, Robert L. Hearnes, Sr., appeals his convictions for sexual assault of a child in the first and third degree involving two minor children, J.W. and H.C., entered by the district court for Douglas County. He argues that the district court erred in consolidating his charges, admitting

evidence of a prior sexual assault, admitting hearsay evidence, and granting an amendment to the information. He also argues that his trial counsel was ineffective. For the reasons explained below, we affirm.

## BACKGROUND

The district court heard several motions throughout the pendency of the case as discussed below.

*Motion to Consolidate.*

Prior to trial, the State moved to consolidate the charges as to both children into one matter. Hearnes argued that the consolidation was prejudicial because it made it appear that there was a common scheme or plan.

In its motion, the State asserted both matters involved the sexual assault of a female child under or around the age of 12, both involved penile-vaginal penetration, and both involved Hearnes' approaching the child while the child was alone, although others may have been elsewhere in the respective residences. However, the State's evidence also set forth that the sexual assaults occurred in two different residences and involved two different children, each with no knowledge of the other. One of the children, J.W., knew her assailant only as "Mr. Kool-Aid."

The district court granted the motion to consolidate because Hearnes failed to prove prejudice and because the charges were of a similar character. The district court also determined that evidence of each sexual offense would be admitted in the trial of each of the other sexual offenses and that a jury "could separate the charges and associated evidence, without combining evidence of other charges to find guilt on a charge that it would not have found if the Court had ordered separate trials."

*Evidence of Prior Sexual Assault.*

Next, the State moved to offer evidence during the trial of a prior sexual assault committed by Hearnes. Hearnes objected

and argued that the prejudice of the evidence outweighed any probative value.

During a pretrial hearing on its motion, the State offered the deposition of the prior victim, K.H., along with a certified copy of the prior conviction and police reports describing the present sexual assaults. In her deposition, K.H. stated she still had a vivid memory of the sexual assault. According to K.H., she was 7 years old at the time she knew Hearnes and Hearnes was approximately 19 years old. K.H. stated the sexual assault occurred while she was alone at her mother's apartment, wherein Hearnes "tickl[ed her] vagina" on the skin by "pulling [her] panties somewhat to the side." Hearnes was originally charged with sexual assault of a child but pled no contest and was convicted of contributing to the delinquency of a minor in 1995 related to the incident K.H. described.

The district court granted the State's motion. Though the district court found, "by clear and convincing evidence, that [Hearnes] committed a sexual assault upon K.H. pursuant to Neb. Rev. Stat. §§ 27-413 and 28-319(1)," or sexual assault in the first degree, reviewing the context of the district's court order in its entirety, it found clear and convincing evidence to establish the elements of a prior sexual assault of a child in the third degree. See Neb. Rev. Stat. § 28-320.01 (Reissue 2016). The prior sexual assault was similar to those currently charged because it involved vaginal contact of a child who was alone in her residence. Though there was a gap of 30 years, the district court relied on other Nebraska cases, such as *State v. Valverde*, 286 Neb. 280, 835 N.W.2d 732 (2013), that found evidence of prior acts with a similar time gap to still be more probative than prejudicial.

*Statements for Medical Treatment.*

At trial, the State moved to enter J.W.'s recorded forensic interview from Project Harmony, a child advocacy center. A nurse practitioner and a forensic interviewer who met with J.W. described the forensic interview process at Project Harmony.

Emma Wright, the nurse practitioner, testified that Project Harmony serves children and adolescents that may have experienced abuse and neglect. At Project Harmony, a child undergoes an interview and medical checkup. The medical checkup is usually performed by a nurse practitioner. Wright discussed how both the interviewer and nurse meet with the child at the beginning to explain the process. Ellie Arnold, the forensic interviewer, explained that the interview is recorded and conducted by a mental health practitioner. Both Wright and Arnold testified that the interviewer explains his or her role and that the interview would be first; then the nurse explains his or her role and explains that a checkup would follow the interview.

Arnold went on to explain that both the interviewer and the nurse work together to make sure the child is "safe and healthy." After the interview, the interviewer meets with the medical provider to "provide a history of the child, what [was] talked about in [the interview], and that helps aid the nurse in potential medical treatment . . . and then aid in follow-up referrals that that child may need."

Later, the detective for J.W.'s case, Marisa Boyce, explained that the interview is used by law enforcement to prevent the child from having to tell the story multiple times.

Here, both Wright and Arnold claimed that J.W. appeared to understand the process and each of the workers' roles. Arnold testified she believed that J.W. understood that Arnold was there to make sure J.W. was "healthy and safe." Arnold described behaviors she had witnessed by children who did not understand the process or seemed confused by it. According to Arnold, J.W. did not exhibit any of those signs Arnold had previously perceived. Arnold indicated that J.W. was responsive in the interview and that she believed J.W. followed the conversation.

J.W. reiterated in her interview that she was there for an appointment. And her caretaker, Linda Gibbs, advised that she understood J.W. would receive a mental and physical

examination. At the interview, J.W. was told that she was there to make sure she was "safe and healthy" and that she would meet with the nurse after the interview. J.W. also nodded in the affirmative to promise to tell the truth.

Hearnes objected to the district court's admission of the forensic interview, based on hearsay. Hearnes argued that during the interview, J.W. appeared distracted, fidgeted, and exclaimed random comments. Hearnes' counsel pointed out that J.W. guessed answers to several preliminary questions, such as Arnold's dog's name and Arnold's age, which J.W. was instructed not to do.

The State argued that while she guessed at a few preliminary questions and never sat still, J.W. continued to pay attention and respond to most questions appropriately. As the interview progressed, J.W. provided detailed answers to the questions posed.

In reviewing the evidence, the district court determined that J.W.'s interview was admissible under the medical treatment hearsay exception because the district court inferred from the entirety of the interview that J.W. believed her statements were being used for medical treatment.

*Amended Information.*

During trial, but before the verdicts, the State moved to amend the information to conform to evidence adduced at trial regarding a residential lease that expanded the possible range of dates when Hearnes' alleged sexual assault of J.W. could have occurred. The State sought to expand the range to begin January 1, 2017, rather than January 1, 2019, as initially alleged. The State acknowledged that the lease was not previously disclosed to the defense. Hearnes argued that the amendment would violate his right to a fair trial and would be prejudicial because he did not have notice of the possible date range.

However, apart from the undisclosed evidence, the State argued that during depositions prior to trial, J.W. was unable

to articulate the dates when the sexual assault occurred. Additionally, the State mentioned that a police report connected Hearnes with J.W. in 2017. The district court granted the State leave to amend the information.

*Verdicts.*

During the trial and before jury deliberations, the district court instructed the jury not to talk to anyone about the case or listen to any conversations related to the trial and to tell the judge if anyone persisted in trying to address trial issues with a juror. The jury was also instructed to come "to a separate decision regarding each crime." The jury found Hearnes guilty on two counts of sexual assault of a child in the first degree and one count of sexual assault of a child in the third degree. Hearnes appeals.

## ASSIGNMENTS OF ERROR

Hearnes argues, restated and restructured, that the district court erred in (1) consolidating his charges, (2) admitting evidence of a prior sexual assault, (3) admitting evidence of a forensic interview, and (4) granting an amendment to the information during trial. Hearnes also asserts that (5) his counsel was ineffective for failing to (a) investigate another person that went by his same alias, (b) move for mistrial due to potential jury tampering, (c) request a continuance to investigate additional witnesses, and (d) impeach J.W. with inconsistent statements.

## STANDARD OF REVIEW

[1] A trial court's ruling on a motion for consolidation of prosecutions properly joinable will not be disturbed on appeal absent an abuse of discretion. *State v. Sawyer*, 319 Neb. 435, 22 N.W.3d 650 (2025).

[2] Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an

abuse of discretion. *State v. Falcon*, 319 Neb. 911, 25 N.W.3d 462 (2025).

A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *State v. Price*, 320 Neb. 1, 26 N.W.3d 70 (2025).

[3] Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination to admit evidence over a hearsay objection or exclude evidence on hearsay grounds. *State v. Hagens*, 320 Neb. 65, 26 N.W.3d 174 (2025). In a de novo review, an appellate court reaches a conclusion independent of the trial court. *Id.*

[4] Whether a statement was both taken and given in contemplation of medical diagnosis or treatment is a factual finding made by the trial court in determining the admissibility of the evidence. See *State v. Swartz*, 318 Neb. 553, 17 N.W.3d 174 (2025).

[5,6] Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *Id.* In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## ANALYSIS

*Motion to Consolidate.*

Hearnes argues that the district court abused its discretion in granting the State's motion to consolidate, because the offenses were not sufficiently related, and that the joinder was prejudicial. We disagree.

[7-9] There is no constitutional right to a separate trial. *State v. Sawyer, supra*. Joinder of multiple offenses for a single trial is favored and is the rule rather than the exception in criminal cases. *State v. Corral*, 318 Neb. 940, 20 N.W.3d 372 (2025). Joinder and severance are controlled by Neb. Rev. Stat. § 29-2002 (Reissue 2016). See *State v. Sawyer, supra*. Pursuant to § 29-2002:

(1) Two or more offenses may be charged in the same indictment, information, or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

(2) The court may order two or more indictments, informations, or complaints, or any combination thereof, to be tried together if the offenses could have been joined in a single indictment, information, or complaint . . . .

(3) If it appears that a defendant or the state would be prejudiced by a joinder of offenses in an indictment, information, or complaint or by such joinder of offenses in separate indictments, informations, or complaints for trial together, the court may order an election for separate trials of counts, indictments, informations, or complaints, grant a severance of defendants, or provide whatever other relief justice requires.

As this language suggests, whether offenses were properly joined involves a two-stage analysis: (1) whether the offenses were sufficiently related so as to be joinable and (2) whether the joinder was prejudicial to the defendant. *State v. Sawyer, supra*. Joinder of related offenses is intended to promote the goals of trial convenience and judicial economy. *Id.* A clear presumption exists in favor of a joinder of offenses and against severance. *State v. Corral, supra*.

At the hearing, Hearnes argued only that the joinder was prejudicial. In his brief, Hearnes attempts to add the argument

that the offenses were not sufficiently related. Appellate courts do not generally consider arguments and theories raised for the first time on appeal. *Tyrell v. Frakes*, 309 Neb. 85, 958 N.W.2d 673 (2021). Therefore, we consider only whether the joinder was prejudicial to Hearnes.

[10] A defendant opposing joinder of charges must meet a high burden of proving prejudice. *State v. Sawyer*, 319 Neb. 435, 22 N.W.3d 650 (2025). To carry that burden, the defendant must show compelling, specific, and actual prejudice. *State v. Corral, supra*. To establish prejudice, the defendant must have been deprived of an appreciable chance for an acquittal, a chance that the defendant would have had in a severed trial. *State v. Sawyer, supra*. Joined charges do not usually result in prejudice if the evidence is sufficiently simple and distinct for the jury to easily separate evidence of the charges during deliberations. *State v. Corral, supra*. This is particularly true when the trial court specifically instructed the jury to separately consider the evidence for each offense. *State v. Knutson*, 288 Neb. 823, 852 N.W.2d 307 (2014). Even when the risk of prejudice is high, a court's limiting instructions often will suffice to cure any risk of prejudice, as a jury is presumed to follow its instructions. See *State v. Corral, supra*.

The charges in this case are sufficiently simple and distinct for the jury to easily separate evidence of the charges. The assaults occurred in two different locations, occurred at two different times, and involved two different children, each of whom had no knowledge of the other. In addition, the district court specifically instructed the jury to come to a separate decision regarding each charge. Therefore, the district court did not abuse its discretion in granting the State's motion to consolidate.

*Evidence of Prior Sexual Assault.*

Hearnes argues that the district court abused its discretion in admitting evidence of a prior sexual assault because there was not clear and convincing evidence that the sexual assault

occurred, and the risk of prejudice substantially outweighed the probative value of the evidence. We find this claim fails.

Neb. Rev. Stat. § 27-414 (Reissue 2016) provides when a prior sexual assault is admissible:

> In a criminal case in which the accused is accused of an offense of sexual assault, evidence of the accused's commission of another offense or offenses of sexual assault is admissible if there is clear and convincing evidence otherwise admissible under the Nebraska Evidence Rules that the accused committed the other offense or offenses. If admissible, such evidence may be considered for its bearing on any matter to which it is relevant.

Clear and convincing evidence means the amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved; clear and convincing evidence is more than a preponderance of the evidence, but less than proof beyond a reasonable doubt. *Benjamin S. v. Crystal S.*, 313 Neb. 799, 986 N.W.2d 492 (2023).

The district court found that there was clear and convincing evidence that Hearnes committed a prior sexual assault on a child in the third degree.

Section 28-320.01 states:

> (1) A person commits sexual assault of a child in the second or third degree if he or she subjects another person fourteen years of age or younger to sexual contact and the actor is at least nineteen years of age or older.
>
> . . . .
>
> (3) Sexual assault of a child is in the third degree if the actor does not cause serious personal injury to the victim.

The State submitted a deposition of the victim where she reiterated her vivid memory of the prior sexual assault. She described that she was 7 years old and Hearnes was approximately 19 years old when Hearnes "tickl[ed her] vagina" on the skin while she was alone with him. The tickling did not cause the victim any serious personal injury. It was not clearly untenable for the district court to have a firm belief

in the facts that were adduced from the victim's deposition. Therefore, the district court did not abuse its discretion when it found that there was clear and convincing evidence that Hearnes committed a prior sexual assault of a child in the third degree.

However, the inquiry does not end there. The district court then must determine whether the evidence was prejudicial.

> Before admitting evidence of the accused's commission of another offense or offenses of sexual assault under this section, the court shall conduct a hearing outside the presence of any jury. At the hearing, the rules of evidence shall apply and the court shall apply a section 27-403 balancing and admit the evidence unless the risk of prejudice substantially outweighs the probative value of the evidence. In assessing the balancing, the court may consider any relevant factor such as (a) the probability that the other offense occurred, (b) the proximity in time and intervening circumstances of the other offenses, and (c) the similarity of the other acts to the crime charged.

§ 27-414(3). We next review the relevant factors for the balancing test.

First, Hearnes was not convicted of sexual assault of a child in the third degree for the prior sexual assault. Instead, he pled no contest to an amended charge of contributing to the delinquency of a minor. The outcome of a prior charge is relevant in determining prejudice. See *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020).

[11] Second, the prior sexual assault occurred approximately 30 years prior. The question whether evidence of other conduct is too remote in time is largely within the discretion of the trial court. *State v. Valverde*, 286 Neb. 280, 835 N.W.2d 732 (2013). While remoteness in time may weaken the value of the evidence, such remoteness does not, in and of itself, necessarily justify exclusion of the evidence. *Id.* Sexual assaults from 27 years prior were still admitted when

the prior sexual assaults were similar to the current charges. See *State v. Stephens*, 237 Neb. 551, 466 N.W.2d 781 (1991) (finding also that evidence closer in time should not have been admitted because sexual assault was not similar to current charges).

Third, "overwhelming similarity" is not required for the balancing test. See *State v. Valverde*, 286 Neb. at 298, 835 N.W.2d at 746. In *State v. Valverde, supra*, the Nebraska Supreme Court found that the prior sexual assault was similar to the current charges (comparing digital penetration and vaginal intercourse with vaginal intercourse, sexual requests, oral sex, and touching of breast, bottom, and penis), even though the prior sexual assault involved different sexual contact. It found that because the sexual assault involved a child who was a similar age and in a similar relationship with the defendant, the sexual assaults were similar for the purpose of the balancing test. See *id.*

Here, the prior sexual assault was similar to those with which Hearnes was currently charged because all the assaults involved a child below or near the age of 12 to whom Hearnes had access, occurred when the child was alone with Hearnes, and involved vaginal contact. The main difference Hearnes points out is that the prior sexual assault did not involve penetration but only vaginal touching. But like in *State v. Valverde, supra*, it was possible to find that the various sexual contacts were similar for the balancing test.

When reviewing the relevant factors for the balancing test, it was not clearly untenable for the district court to find that the risk of prejudice did not substantially outweigh the probative value of the prior sexual assault. See, *State v. Lierman, supra* (finding that risk of prejudice did not substantially outweigh probative value of prior sexual assault when sexual assaults were close in time and similar but defendant was acquitted of prior sexual assault); *State v. Valverde, supra* (finding that risk of prejudice did not substantially outweigh probative value of prior sexual assault when sexual assaults

were similar and occurrence of prior sexual assault was not disputed, but prior sexual assault occurred 17 years prior); *State v. Kibbee*, 284 Neb. 72, 815 N.W.2d 872 (2012) (finding that risk of prejudice did not substantially outweigh probative value of prior sexual assault when sexual assaults were similar but not close together in time).

Contrary to Hearnes' assertion, the district court maintained its "gatekeeping function" by first determining there was clear and convincing evidence of the prior sexual assault and then finding that the risk of prejudice did not substantially outweigh the probative value of the evidence by reviewing the relevant factors. See brief for appellant at 12. Therefore, the district court did not abuse its discretion in admitting the evidence of the prior sexual assault.

*Statements for Medical Treatment.*

Hearnes argues that the district court erred in admitting the forensic interview because it did not fall under the medical treatment hearsay exception.

"Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Neb. Rev. Stat. § 27-801(3) (Cum. Supp. 2024). Hearsay is not admissible except as provided by rule. See Neb. Rev. Stat. § 27-802 (Reissue 2016). "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are an exception to the hearsay rule and may be admissible. See Neb. Rev. Stat. § 27-803(4) (Cum. Supp. 2024). The exception is based on the notion that a person seeking medical attention will give a truthful account of the history and status of his or her condition in order to ensure proper treatment. See *State v. Swartz*, 318 Neb. 553, 17 N.W.3d 174 (2025).

[12] Statements having a dual medical and investigatory purpose are admissible only if the proponent of the statements demonstrates that (1) the declarant's purpose in making the statements was to assist in the provision of medical diagnosis or treatment and (2) the statements were of a nature reasonably pertinent to medical diagnosis or treatment by a medical professional. See *id.* Statements made by a child victim of sexual abuse to a forensic interviewer in the chain of medical care may be admissible even though the interview has the partial purpose of assisting law enforcement's investigation of the crimes. See *State v. Corral*, 318 Neb. 940, 20 N.W.3d 372 (2025). The fundamental inquiry to determine whether statements made by a declarant who knew that information could be shared with law enforcement had a medical purpose is if the challenged statement has some value in diagnosis or treatment, because the patient would still have the requisite motive for providing the type of sincere and reliable information that is important to that diagnosis and treatment. *State v. Swartz, supra*.

[13,14] Hearnes assigns as error only that the forensic interview was not made with the intent to obtain medical treatment. The fundamental inquiry when considering a declarant's intent is whether the statement, despite its dual purpose, was made in legitimate and reasonable contemplation of medical diagnosis or treatment. See *State v. Jedlicka*, 297 Neb. 276, 900 N.W.2d 454 (2017). There need not be direct evidence of a declarant's state of mind; instead, the appropriate state of mind of the declarant may be reasonably inferred from the circumstances. *Id.* Whether the circumstances warrant inferring an appropriate state of mind is necessarily a fact-specific determination. *Id.*

In *State v. Jedlicka, supra*, the Supreme Court reviewed a child's Project Harmony forensic interview. The court found several facts to support its determination that the forensic interview was for medical treatment. See *id.* First, it found that the interviewer told the child she was there "to help and make

sure that nothing was wrong with her" and that the interviewer asked the child to tell the truth. *State v. Jedlicka*, 297 Neb. at 292, 900 N.W.2d at 467. Second, the interviewer "testified that one purpose of her interviews is to help figure out what needs the child may have regarding medical or therapeutic care to make a determination concerning any followup treatment or care that may be needed for the child." *Id*. Third, the child's caretaker understood the treatment that would occur at Project Harmony. See *State v. Jedlicka, supra*. The court specified that the circumstances in every case will be different and that no one fact is dispositive in an analysis. See *id.*

Like the events during the interview in *State v. Jedlicka, supra*, here, J.W. was told she was at Project Harmony to make sure she was "safe and healthy" and J.W. promised to tell the truth. Additionally, Arnold testified that she, as the interviewer, meets with the medical provider to "provide a history of the child, what [was] talked about in [the interview], and that helps aid the nurse in potential medical treatment . . . and then aid in follow-up referrals that that child may need." And J.W.'s caretaker understood that J.W. would receive a mental and physical examination at Project Harmony.

J.W. also reiterated that she was there for an appointment. And though not specifically addressed by the district court, it was revealed in the evidence the district court reviewed that J.W. had been to Project Harmony before and would have been familiar with the process that a medical examination followed the interview.

Hearnes argues that J.W. was distracted and unresponsive during the interview. Even though J.W. was unable to sit still during the interview, she was able to follow the conversation and respond accordingly. During preliminary questions, she guessed a few answers, but as the interview progressed, she gave detailed answers and responded appropriately, contrary to Hearnes' argument.

Wright and Arnold testified that J.W. appeared to understand the process and the workers' roles, and Arnold believed

that J.W. followed the conversation in the interview. Arnold had previously witnessed the behavior of children who did not understand, and J.W. did not exhibit those signs. Therefore, considering all the facts, the district court did not err in admitting the forensic interview.

*Amended Information.*

Hearnes argues that the district court erred in granting the State's motion to amend the information because the increased date range caused him prejudice.

[15,16] An information must inform the accused with reasonable certainty of the crime charged so that the accused may prepare a defense to the prosecution and, if convicted, be able to plead the judgment of conviction on such charge as a bar to a later prosecution for the same offense. *State v. Theisen*, 306 Neb. 591, 946 N.W.2d 677 (2020). A trial court, in its discretion, may permit a criminal information to be amended at any time before verdict or findings if no additional or different offense is charged and the substantial rights of the defendant are not prejudiced. *State v. Banks*, 278 Neb. 342, 771 N.W.2d 75 (2009). A criminal information may be amended specifically to conform to the evidence adduced at trial. See *State v. Piskorski*, 218 Neb. 543, 357 N.W.2d 206 (1984).

Here, the amendment was made before the verdict and there was no additional or different offense charged. Therefore, our review rests on whether the substantial rights of Hearnes were prejudiced by the amendment. A consideration in determining the propriety of the amendment and whether the defendant was prejudiced thereby is whether the amendment surprised the defense. *State v. Antillon*, 229 Neb. 348, 426 N.W.2d 533 (1988) (superseded by statute on other grounds as stated in *State v. Andersen*, 232 Neb. 187, 440 N.W.2d 203 (1989).

The case had proceeded for 2 years with the date range for J.W.'s sexual assault charge beginning in 2019. The residential lease that expanded the possible date range was not disclosed to Hearnes prior to trial. The State's amendment to

the information added 2 years to the date range to conform to the evidence adduced at trial.

However, despite his argument otherwise, Hearnes had prior knowledge that the possible dates for the sexual assault charge could be as early as January 1, 2017. In J.W.'s deposition prior to trial, she stated she was unsure of when the sexual assault occurred but indicated it could have occurred between 2015 and 2019. Additionally, Hearnes received police reports prior to trial connecting him to J.W. in 2017. Hearnes was not prejudiced by the amendment because he was not surprised that the possible date range for the charge could have begun in 2017, based on evidence he received apart from the lease. Therefore, the district court did not abuse its discretion in granting the State's motion to amend the information.

*Insufficient Claims for Ineffective*
*Assistance of Counsel.*

Hearnes makes four claims that his trial counsel was ineffective. In two of those claims, Hearnes argues that his counsel was ineffective because his counsel "failed to request a continuance of trial to investigate and potentially call witnesses" and "failed to impeach the State's witness J.W. with inconsistent statements."

For the first assignment, Hearnes did not specify whom the "witnesses" were. For the second assignment, Hearnes indicated the witness was J.W. but did not specify what "statements" were inconsistent. Hearnes argues that the record is insufficient to address each of these assignments, but we need not determine this, insofar as the assignments were insufficiently pled, as discussed below.

[17] We begin by setting forth the legal framework for evaluating assignments of error that trial counsel was ineffective. In *State v. Rupp*, 320 Neb. 502, 523, 28 N.W.3d 74, 89 (2025), the Supreme Court clarified that assignments of error on direct appeal regarding ineffective assistance of trial counsel, "standing alone," must specifically allege what conduct constituted

deficient performance. A generalized and vague assignment of error that does not advise an appellate court of the issue submitted for decision will not be considered. *State v. Rupp, supra.* An assignment is specific when it addresses a specific issue that does not require additional information to understand precisely what the assignment attacks. *Id.* Any claim of ineffective assistance of counsel alleging deficient conduct must be more specific than generalities of inadequate preparation or failures to introduce beneficial evidence. See *id.*

[18,19] To preserve an ineffective assistance of counsel claim on direct appeal, the claim must be stated with particularity in the assignment of error and then separately argued. See *State v. Rupp*, 33 Neb. App. 562, 19 N.W.3d 771 (2025). Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. *State v. Hagens*, 320 Neb. 65, 26 N.W.3d 174 (2025). An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *State v. Kruger*, 320 Neb. 361, 27 N.W.3d 398 (2025).

In *State v. Hagens*, 320 Neb. at 85, 26 N.W.3d at 192, the Supreme Court found that an assertion concerning "'witnesses'" without any further description or detail in the assignment of error was not sufficiently stated. Similarly, an assertion claiming inconsistent statements without pointing to specific statements in the record is not sufficiently pled. See *State v. Garcia*, 315 Neb. 74, 994 N.W.2d 610 (2023). Hearnes also argues that the record did not include the statements that were inconsistent for him to point to, such as J.W.'s deposition or statements to law enforcement. However, this is refuted by the record. J.W.'s deposition was entered

into evidence during pretrial proceedings and included in the bill of exceptions, and according to Boyce, J.W. was not interviewed by the police because they relied on the Project Harmony forensic interview. Therefore, these assignments of error are not sufficiently pled because Hearnes failed to specify for the first assignment what "witnesses" would be investigated and for the second assignment what specific "statements" were inconsistent.

*Ineffective Assistance of Counsel.*

Hearnes further argues that his counsel was ineffective for failing to investigate a "known individual with the same nickname as [Hearnes] as the perpetrator," brief for appellant at 21, and "move for a mistrial based on evidence of potential jury tampering," *id*. at 22. Pursuant to *State v. Rupp*, 320 Neb. 502, 28 N.W.3d 74 (2025), Hearnes' first assignment of error regarding a "known individual with the same nickname" is sufficiently pled because it specifically states who counsel failed to investigate. While we question whether "potential jury tampering" is sufficiently pled, see *id*., Hearnes' claim is refuted by the record.

[20-23] We continue our analysis by explaining the legal standard for reviewing ineffective assistance of counsel claims deemed sufficient. To prevail on a claim of ineffective assistance of counsel, the defendant must show that his or her counsel's performance was deficient and that this deficient performance prejudiced the defendant's defense. See *State v. Hagens, supra*. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability of prejudice from ineffective assistance of counsel is a probability sufficient to undermine

confidence in the outcome. *Id.* Courts may examine performance and prejudice in any order and need not examine both prongs if the defendant fails to demonstrate either. *State v. Parks*, 319 Neb. 773, 25 N.W.3d 146 (2025).

First, Hearnes argues that Gibbs, J.W.'s current caretaker, indicated in her deposition that she knew "another individual who went [by] the nickname 'Kool-Aid,'" Hearnes' alias. Brief for appellant at 22. Hearnes argues that the record is insufficient to address his claim that trial counsel should have investigated that other individual. We disagree.

Even though Gibbs' deposition was not included in the record, the remaining record is sufficient to show Hearnes was not prejudiced by counsel's alleged deficient performance. Boyce testified she discovered a police report during her investigation that connected J.W.'s mother and Hearnes, who had the "alias of Kool Aid." Regardless of whether there was another individual named "Kool-Aid," J.W. identified Hearnes in a six-photo lineup conducted before trial as the person she knew as "Kool-Aid" because of his moustache and beard and because he "lookeded [phonetic] just like him." J.W. also identified "Kool-Aid" in the courtroom during trial and testified that "Kool-Aid" put his penis in her vagina.

Second, Hearnes argues that his counsel was ineffective for failing to move for mistrial because of potential jury tampering by one of the children. Hearnes argues that the record is insufficient to address this claim because no information regarding jury tampering was provided. We disagree.

[24] Hearnes' claim of jury tampering is based on his observation that an attorney for the State and J.W. walked near the jury room that was occupied by jurors, but Hearnes did not directly witness jury tampering. Speculation alone does not support a claim for ineffective assistance of counsel. See *State v. Galindo*, 315 Neb. 1, 994 N.W.2d 562 (2023). See, also, *State v. Avina-Murillo*, 301 Neb. 185, 204, 917 N.W.2d 865, 878 (2018) ("[w]e will not presume prejudice based on mere speculation"). The jury was instructed not to

talk to anyone about the case and to tell the judge if anyone persisted in trying to address trial issues with a juror. A jury is presumed to follow its instructions. *State v. Corral*, 318 Neb. 940, 20 N.W.3d 372 (2025). Defense counsel is not ineffective for failing to raise an argument that has no merit. *State v. Devers*, 313 Neb. 866, 986 N.W.2d 747 (2023). As there was no evidence of jury tampering and the jury was instructed not to talk to anyone about the case, Hearnes' claim fails because he is unable to show prejudice.

## CONCLUSION

We conclude that the district court did not abuse its discretion in granting the motions, the forensic interview was admittable hearsay under the medical treatment exception, and Hearnes was not prejudiced by ineffective assistance of counsel.

AFFIRMED.

PIRTLE, Judge, participating on briefs.